# Hotchkin, Appellant, v. Erdrich.

*Negligence—Dangerous premises—Chimney stack—Inspection—Nonsuit.*

In an action against the owner of a brewery to recover damages for personal injuries, it appeared that the defendant had a contract with plaintiff's employer by which the latter was to place a leaden cap over the top of a tall chimney stack. In making the arrangements the architect of the defendant told the employer of the plaintiff that there was an inside ladder which the workmen could use to ascend the chimney, and this information was repeated to plaintiff. At the time appointed, plaintiff who was to do the work, appeared at the brewery and asked where the stack was, and was shown to the chimney, and the manhole leading into it. After satisfying himself that the fires were out, and that there was no danger from that score, he entered the chimney, and found there a series of rungs or iron bars extending across a section of the stack, with the ends of the bar walled, or embedded in the brick sides of the chimney, one bar above the other, at irregular intervals from the bottom to the top, thus forming in effect a crude ladder. Before he began to ascend, and as he reached them in succession, the plaintiff tapped each rung or bar with a piece of solder, to ascertain if it was firm and solid before trusting his weight to it. His object in going up the chimney at this time was, not to begin the actual work, but to obtain necessary measurements. After mounting some distance, he was standing upon one bar, with his hands upon another about opposite his waist, and then with his right hand he reached up to a third bar, which he tapped with the solder, and found it apparently secure. He testified that the tapping with the solder would, in his judgment, show whether the rungs were solid. Being satisfied with the test as to this particular bar, to which he was about to transfer his weight, he changed the solder to his left hand, and took hold of the bar with his right hand, and while thus in the act of raising himself, the iron bar pulled out, bringing with it a brick, and the plaintiff fell to the bottom of the stack, sustaining severe injuries. The testimony did not show any direction to the plaintiff by the defendant to use the inside ladder, but it did show permission, or possibly an invitation, to do so. *Held,* that a nonsuit was properly entered.

MESTREZAT and ELKIN, JJ., dissent.

Argued Jan. 22, 1906. Appeal, No. 100, Jan. T., 1905, by plaintiff, from order of C. P. No. 5, Phila. Co., March T., 1903, No. 1,822, refusing to take off nonsuit in case of William P. Hotchkin v. John B. Erdrich, trading as Andrew Erdrich & Son. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before DAVIS, J.

The facts are stated in the opinion of the Supreme Court.

The court entered a compulsory nonsuit which it subsequently refused to take off:

*Error assigned* was refusal to take off nonsuit.

*George S. Graham*, with him *J. Quincy Hunsicker*, for appellant.—The case was for the jury: Phila. & Reading R. R. Co. v. Spearen, 47 Pa. 300; Schilling v. Abernethy, 112 Pa. 437; Duffy v. Sable Iron Works, 210 Pa. 326.

As to a licensee the owner is liable for active negligence but as to an invited person, for passive negligence: Severy v. Nickerson, 120 Mass. 306; Larmore v. Crown Point Iron Co., 101 N. Y. 391 (4 N. E. Repr. 752).

Invitation will be inferred where there is a common interest or mutual advantage in the absence of express invitation, but in this case the invitation was express because the defendant pointed out and indicated the ladder as the means to be used by the employees of Thorn company to reach the place where the work was to be done: Bennett v. R. R. Co., 102 U. S. 577; Polenske v. Lit Bros., 18 Pa. Superior Ct. 474; Clopp v. Mear, 134 Pa. 203; Woodruff v. Painter, 150 Pa. 91; Klapproth v. Baltic Pier, etc., Co., 43 Atl. Repr. 981; Bright v. Barnett & Record Co., 88 Wis. 299 (60 N. W. Repr. 418); Indermaur v. Dames, L. R., 1 C. P. 274; Hargreaves v. Deacon, 25 Mich. 1; Sweeny v. Old Colony, etc., R. R. Co., 92 Mass. 368; Corby v. Hill, 4 C. B. N. S. 556; Evansville, etc., R. R. Co. v. Griffin, 100 Ind. 221–223; Pottstown Iron Co. v. Fanning, 114 Pa. 234; Pender v. Raggs, 178 Pa. 337; Larmore v. Crown Point Iron Co., 101 N. Y. 391 (4 N. E. Repr. 752).

Actual knowledge or notice of defects on the part of the owner is not necessary: Nichols v. R. R. Co., 83 Va. 99 (5 S. E. Repr. 171); Carleton v. Iron & Steel Co., 99 Mass. 216; Indermaur v. Dames, L. R., 1 C. P. 274; Woodruff v. Painter, 150 Pa. 91; Pittsburg v. Grier, 22 Pa. 54; Corby v. Hill, 4 C. B. N. S. 556.

If the ladder be regarded as an appliance provided by the defendant for the use of the plaintiff in the performance of the said work the same rules apply: Bright v. Barnett & Record Co., 26 L. R. A. 524; Sharpley v. Wright, 205 Pa. 253.

*Thomas Leaming,* with him *Benjamin Alexander,* for appellee.—There was no evidence of defendant's negligence: Sykes v. Packer, 99 Pa. 465; Wannamaker v. Burke, 111 Pa. 423; Kerrigan v. Penna. R. R. Co., 194 Pa. 98.

There was no duty to inspect the inside of the chimney: Walton v. Bryn Mawr Hotel Co., 160 Pa. 3.

There was no actual notice, nor constructive notice, of any defect: McKenna v. Paper Co., 176 Pa. 306.

Plaintiff assumed the risk: McKinzie v. Phila., 8 Pa. C. C. Rep. 293; Durst v. Carnegie Steel Co., 173 Pa. 162.

OPINION BY MR. JUSTICE POTTER, March 19, 1906:

This was an action of trespass to recover damages for personal injuries sustained by the plaintiff while he was upon the premises of the defendant, for the purpose of preparing to make repairs at the top of a tall chimney connected with the defendant's brewery. Upon the trial, at the close of plaintiff's testimony, a judgment of nonsuit was entered, which the court below refused to take off. It appears from the evidence that shortly before the time of the accident, the defendant had plans and specifications prepared for an extension to his plant. In this connection, although the chimney in question was not a part of the new construction, it was ascertained that a new leaden cap over one-half of the top of the smokestack, would be required. The defendant consulted his architects, and through them, a written contract was made with the Thorn company to furnish this cap and put it in place. The plaintiff in this case, was a competent and experienced workman, who had been for many years employed by the Thorn company. It was arranged that this particular bit of work should be done on a certain Monday morning, when the fires were to be put out at the brewery. In making the arrangements the architect of the defendant told the employers of the plaintiff, that there was an inside ladder which the workmen could use to ascend the chimney; and this information was repeated to the plaintiff. At the time appointed, he appeared at the brewery, and asked where the stack was, and was shown the chimney, and the manhole leading into it. After satisfying himself that the fires were out, and that there was no danger from that score, he entered the chimney, and found there, a

series of rungs or iron bars extending across a section of the stack, with the ends of the bars walled, or embedded in the brick sides of the chimney, one bar above the other, at irregular intervals from the bottom to the top, thus forming in effect a crude ladder. Before he began to ascend, and as he reached them in succession, the plaintiff tapped each rung or bar with a piece of solder, to ascertain if it was firm and solid before trusting his weight to it. His object in going up the chimney at this time was, not to begin the actual work, but to obtain necessary measurements. After mounting some distance, he was standing upon one bar, with his hands upon another about opposite his waist, and then with his right hand he reached up to a third bar, which he tapped with the solder, and found it apparently secure. He testified that the tapping with the solder would, in his judgment, show whether the rungs were solid. Being satisfied with the test as to this particular bar, to which he was about to transfer his weight, he changed the solder to his left hand, and took hold of the bar with his right hand, and while thus in the act of raising himself, the iron bar pulled out, bringing with it a brick, and the plaintiff fell to the bottom of the stack, sustaining severe injuries.

The testimony does not show any direction to the plaintiff by the defendant to use the inside ladder, but it does show permission, or possibly an invitation, to do so.

The case presented is that of one injured while on the premises of another, in the discharge of the duties of his employment. He was not, however, the servant of the defendant, but was in the employ of the contracting firm who were to do the work. The defendant had no right to control his actions, and apparently did not even offer him any advice. The plaintiff was not injured in a passageway provided for the ordinary use of anyone. On the contrary, he was hurt while ascending the inside of the chimney, and while in a place and position which only upon rare occasions, was occupied by anyone. Undoubtedly, the iron bars had been placed in the chimney at the time of its construction, for the use of the workmen, and had been left there for the possible use of those making repairs, or otherwise requiring access to the inside of the stack. The work required of the plaintiff was in its nature perilous, as it had to be done at a great height from the ground, and that the plain-

tiff appreciated the danger was shown by the care with·which, he made his preparations for the ascent, and by the close inspection which he gave to each rung of the ladder as he mounted, step ·by step. He intended to take nothing for granted, in so far as his safety in this respect was concerned, but tested ·each bar as he came to it. This is not a case where the relation of master and servant exists, in which a higher degree of duty is imposed, but even in such cases, the master is not responsible for the danger involved in mounting scaffolds, or ascending unfinished stairways, or in· passing perilous places, where the workman voluntarily goes in the prosecution of his work with as much knowledge of the risk as his employer has : Sykes v.. Packer, 99 Pa. 465. The same degree of attention is not required in caring for a place which is only used at rare intervals as is requisite in the maintenance of a passageway used constantly or frequently by employees or by the public : Kerrigan v. Penna. R. R. Co., 194 Pa. 98. It is undisputed here that no occasion for inspecting the inside of this chimney, or for making any use of the ladder had arisen for nine years ; and, when the plaintiff found that the convenient way of ascending the chimney was by means of the ladder, he did not assume that it. was in good condition, but he took the precaution to carefully inspect the rungs as he ascended, and proceeded only as he felt justified in doing from the result of his tests. The work in which the plaintiff was engaged when he fell, was essentially that of inspection. Had he been deceived by any statement of the defendant as to the condition of the ladder, or had he even relied upon any assurance given to him that it was fit.for use, the case would have been different. But it is apparent from the testimony that he was testing the safety of the ladder for himself, and was relying upon his own judgment.' No better method of inspection was suggested than that which he adopted, and if anyone else had attempted to perform the same duty, the same danger would have been faced.

The. plaintiff, as a careful, experienced and competent man, was sent by his employer to do the work, and the premises, including the chimney and the ladder inside of it, were placed at his disposal for that purpose. He was not ordered or instructed by defendant to use the ladder ; he was merely permitted to do so if, and as, he saw fit. When he arrived at· the

place, in response to his inquiry, the stack was pointed out to him, and he thereafter used and relied upon his own judgment. Even the particular bar which pulled out, and caused his fall, was examined and approved by him as sufficient, before he placed his weight upon it. Evidently, his method of testing, or inspecting, was at fault; for the real weakness of the fastening of the bar in question was not revealed by the test which he made. But certain it is that in doing the work, he assumed the risk for himself. To hold otherwise, under the facts of this case, would be to make the defendant an absolute insurer of the safety of the plaintiff while he was testing the ladder for the purpose of his employment.

We think the conclusion reached by the learned trial judge was correct, and the judgment is affirmed.

Mr. Justice Elkin, dissenting :

The learned trial judge directed a nonsuit to be entered upon the grounds, first, that no negligence by the defendant was proven ; and, second, that no duty to the plaintiff devolved on the defendant. In my opinion, this is an erroneous view of the law as applied to the facts of this case. The appellant was not making use of the ladder as a trespasser, nor as a mere licensee, but on the contrary was using it upon the invitation of the defendant. It matters not whether the invitation was in express terms or by implied inference under the facts. The appellant went upon the premises of the appellee to perform work contracted for by the owner whose duty it was to see that the ladder pointed out to the workman as a means of reaching the top of the stack where the work was to be performed, was reasonably safe for the purpose intended. One who enters upon the premises of another on lawful business (in this case to perform work for the owner) by invitation, either express or implied, has " a right to believe that, taking reasonable care of himself, all reasonable care has been used by the owner to protect him in order that no injury may occur:" Severy v. Nickerson, 120 Mass. 306; Larmore v. Crown Point Iron Co., 101 N. Y. 391 (4 N. E. Repr. 752).

The rule stated is good sense and good law. Under the facts in the case at bar it is clear the plaintiff went upon the premises and used the ladder by express invitation of defend-

ant. It is not necessary, however, to go so far in order to sustain the rule, because all the authorities agree that the invitation may be inferred where there is a common interest or mutual advantage. For discussion of principle involved, see Bennett v. L. & N. R. R. Co., 102 U. S. 577. That the duty of reasonable care rests upon the owner of premises to persons who come upon the same by invitation, is a rule recognized and followed in our cases. In Woodruff v. Painter, 150 Pa. 91, at page 96, Mr. Justice HEYDRICK, discussing the principle involved, said: " That the duty neglected would arise from an implied contract that if customers would come to their store no harm that could reasonably be averted should overtake them, and the consideration for such promise would be the chance of profit from their patronage."

In the present case, the advantage or profit to the defendant in suggesting the use of the ladder as a means of ascending the stack was in the reduced cost of placing the metal cap on the top of the same by reason of doing away with the necessity of erecting scaffolding. It is the duty of the owners of premises upon which persons come by invitation, express or implied, to maintain such premises in a reasonably safe condition for the contemplated uses thereof and the purpose for which the invitation is extended: 21 Am. & Eng. Ency. of Law (2d ed.), 471.

A brief recital of the facts will show whether appellant was on the premises by invitation of defendant. The Thorn company sent a representative to the architects to ascertain the kind and quantity of materials to be used, work to be done, and other necessary data upon which to base an estimate of cost. This representative having ascertained the quantity of material required, very properly asked, " What means have you for our workmen to get to the top of that stack? " Whereupon the architects replied, " There was an inside ladder in the stack for the purpose of getting up to the top of it, and that we could have the use of it." With this information as to materials, necessary labor, and the ladder as a means of reaching the top of the stack, the estimate of cost was made and proposition submitted to defendant. It was accepted and the contracting firm sent appellant, a competent and trusted employee, to do the work. Before going to work on the stack,

appellant met defendant in person who directed him "to go in and see Mr. Wagner," his superintendent, for instructions. He waited on the superintendent as directed, asked him where the stack was, and how to reach the same, and was answered as follows: "Come along with me (the superintendent) and I will show you. . . . Here is the stack; there is the manhole; you go through there, and the ladder is on the left side, walled in. The ladder is on that side." When appellant was ordered by his employers to do this work, he was informed that there was no scaffolding there, and that he would find a ladder inside the stack for the purpose of reaching the top. With this information, and these instructions from his employers, and with the superintendent of the defendant pointing out the opening to the stack, and directing him where to find the ladder inside, the appellant proceeded carefully to ascend the ladder, the use of which had been suggested by the architects and superintendent who acted for and represented the defendant with full authority so to do. Under these circumstances the defendant ought not to be permitted to say that appellant did not use the ladder by invitation, either express or implied. If he was there by invitation, and of this there can be no doubt, he had a right to assume the ladder was reasonably safe for the use intended, and it was negligence on the part of defendant in not inspecting it from time to time, and in not maintaining it in proper repair for the use suggested to appellant.

I cannot accept as sound the contention that the appellant assumed the risk of a defective ladder under the facts of this case. He knew nothing about the ladder. He did not know in what manner nor how long it had been erected nor the uses for which it was intended. These facts were known to appellee but unknown to appellant who had a right to act on the assumption, when invited to use the ladder, that it was reasonably safe and that proper care had been exercised in erecting and maintaining it. It is no answer to say that appellant was an expert workman and could judge for himself whether it was safe or not. No workman, expert or inexperienced, could tell by looking up the inside of a smokestack 172 feet high that a ladder way "walled in" had not been properly made, nor sufficiently protected, nor that the rungs or sides were not in safe

condition. Nor do I agree with the argument that because appellant used care in ascending the ladder by tapping each rung above him he thereby assumed the risks of a defective ladder. This would be the equivalent of saying that the negligence of the defendant in not inspecting the ladder for nine years or maintaining it in proper repair is to be excused because appellant used the greatest possible care in ascending it. The suggestion made by the learned counsel for appellee that this was not intended as a ladder but was a temporary passageway left as a convenience for workmen in getting down from the stack at the time of its erection, does not strengthen the case. If this be true, defendant was grossly negligent in inviting appellant to make use of an improvised ladder constructed nine years before for temporary purposes, without informing him of these facts. This case does not belong to the class of cases wherein the employee has been held to assume the dangers of his employment which are open and obvious, and known to him, or with which he had the opportunity to become acquainted. The dangers in this case were not open and obvious. No one could tell by looking at the ladder whether it was safe or not. There was no open and obvious danger to put appellant on notice. He was not familiar with the risks or dangers. He did not know anything about the construction of the ladder, how long it had been built, nor whether it had been properly maintained. It was the duty of defendant to inform him of these things if he wished to be relieved from liability. The appellant had the right to rely on the assumption that the ladder was fit for use because defendant invited him to use it.

If the ladder was a permanent construction to be used by persons in ascending the stack, it was the duty of defendant to inspect and keep it in proper repair for the use intended, and failure to do so is negligence. If, on the other hand, the ladder was only constructed as a temporary convenience for the workmen in descending the stack at the time of its erection, as suggested by the learned counsel for appellee, defendant was negligent in inviting plaintiff to make use of it as a means to reach top of the stack nine years after it had been constructed for the alleged temporary use, without giving appellant notice of these facts.

The position taken by the learned court below that defendant

owed no duty to appellant because he was not his employee, cannot be sustained. While the degree of care as between his own employee, and the employee of the contracting firm, may vary, yet there can be no doubt, under the authorities cited, as well as the rule of our own cases, he owed a duty to appellant who was lawfully upon the premises, the neglect of which would make him liable for injuries resulting from negligence : Pender v. Raggs, 178 Pa. 337 ; Pottstown Iron Co. v. Fanning, 114 Pa. 234.

For these reasons I would reverse the judgment with a procedendo.

Mr. Justice Mestrezat joins in the dissent.