## Charles W. Hardy et al. v. Philadelphia National League Club, Appellant.

Argued October 29, 1929.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Graff, JJ.

*Robert T. McCracken,* and with him *Owen J. Roberts,* for appellant, cited: Spees v. Boggs, 198 Pa. 112; Durning v. Hyman, 286 Pa. 376.

*Louis Levinson,* and with him *Daniel G. Murphy* and *Isaac D. Levy,* for appellee, cited: Sheets v. Electric Railway Company, 237 Pa. 152; Sellner v. Ringling, 62 Pa. 410.

Opinion by Trexler, P. J., July 10, 1930:

The plaintiffs attended a baseball game in the park owned by the defendant, the Philadelphia National

League Club. During the game the stand upon which they sat subsided, causing panic and confusion during which they were injured. The court left the matter of defendant's negligence to the jury who found in favor of the plaintiffs. The defendant has appealed.

We may start with the proposition that the defendant when it invited the public to attend games was required to afford a safe place to sit and view the performances. To assure itself of this, it should have exercised reasonable care in having a proper inspection of the stand at proper times and at seasonable intervals. If upon the trial of the case of this character, it appears in the testimony of the plaintiff that the defendant exercise due care to prevent harm, the court should enter a non-suit. Durning v. Hyman, 286 Pa. 376. If such facts are established in the defense, binding instructions are properly given, but "one way or another, a satisfactory explanation is required." Our court took occasion in Durning v. Hyman, 95 Pa. Superior Ct. 150, to express the opinion that if the testimony offered by the defendant be oral and to the effect that it exercised due care, nevertheless, the jury was bound to determine the weight to be given to it, referring in support of this view to Sorensen v. Quaker City Poster Adv. Co., 284 Pa. 209, to which we may add, Hardy v. Millers Mutual Fire Ins. Co., 293 Pa. 9; and Kindell v. Franklin Sugar Ref. Co., 286 Pa. 359.

The plaintiffs proved the falling of the stand was caused by a spruce beam being broken. It was not capable by reason of internal rot, to sustain the weight which was upon it. The beam had decayed in its center to the extent of fifty per cent of its area. It was not a solid piece of timber, but was two pieces of wood 3″ x 12″, spliced together. There was very little ventilation and it was exposed to the elements. The cause of its rotting was that water seeped in between the two pieces that formed the beam and thus the decay

was occasioned. The stand was erected in 1912. There was testimony that the life of spruce timber was from two to four years and that spliced timber does not usually last as long as a solid beam. The soil was of such a nature as to hold the dampness and be favorable for the development of rot. Under the conditions this timber was, decay was likely to set in immediately after the beam was put in the structure due to dampness and the elements of rain or snow during winter or summer, and to ascertain its condition, a very thorough examination was required from time to time. Trouble could be expected within two or three years. This is practically the substance of the evidence that was produced by the plaintiffs.

It developed upon the defendant to show that he had exercised due care in the premises. To do this he produced witnesses to prove that frequent inspections were made of the stand, usually starting in January or February. The inspectors would mark the portions of the stand which required renewals. Timbers that were marked were replaced or re-enforced. The "building inspectors" testified that where rot occurred, the sounding of the timber by the use of a hammer would locate it. It was difficult to test the beam which broke as it was directly over a post and the rot was inside and was not visible to the eye. The same witness testified that in examining the timbers, it was also customary to take a bit or auger. One witness for the defendant testified that if the board had been tapped on the day it fell, you would have possibly been able to ascertain that it was hollow inside. One of the witnesses testified that the inspection made was the "completest" which could be made and to do it better would have required the tearing down of the stand.

Other witnesses testified that if the timber had been tapped possibly it might have shown that it was

rotten inside. As already stated, a witness for the defendant testified that the stands were built in 1912 and his counsel advances the argument that the plaintiffs were required to prove when the particular beam which broke was put in. The jury could presume in the absence of any evidence to the contrary that the beam in question was part of the original stand, at least, whether it was or was not would be within the knowledge of the defendant or its witnesses. The defendant was satisfied with the bald statement that the stand was erected in 1912, and the jury could infer that that included the beam in question. The defendant started this line of testimony and it is reasonable to infer that he did not wish to go into the subject any further. We may add that there is no assignment covering this phase of the case. The people who made the inspection for the defendant were not experts. They merely occupied the office of "Building Inspector" for the city of Philadelphia. They were not called as experts. There was testimony that there was frequent inspection, but an examination of all the testimony leaves the question open as to whether the defendant had done its duty in the premises.

The court below in its opinion overruling the defendant's motion for a new trial and for judgment n. o. v. states, that "all that the defendant did or claimed to have done was to have made repairs whenever the need for them was pointed out by the employees of the Bureau of Building Inspection." "In the absence of employment by the defendant of experts to make examinations, it should not be heard to complain that the jury were allowed and requested to pass upon the question, inter alia, as to the thoroughness and nature of the examinations made. Compliance with the demands of the Bureau of Building Inspection is not enough to absolve a property owner in such a case from his duty to the public whom he invites upon

his premises. That bureau may be more or less vigilant and efficient according to the manner in which, and the zeal with which, it may choose to perform its public duties, but its activities are directed to the observance of certain minimum requirements demanded by statute. The law has never declared, however, that such requirements were the complete measure of responsibility to private persons entering into contractual relations with the property owner whereby they become entitled to enter his premises and presumably to rely upon his having exercised due care to make the premises safe. Failure to comply with the demands of the Bureau of Building Inspection would have subjected the defendant to certain statutory penalties, but it is believed that the law has always required, and still requires, the property owner's fulfillment of the duty of periodical inspection and examinations of his property, either by himself, or, where such work requires technical skill, by experts employed by him.''

After reading the testimony and noting the different statements and opinions of the various witnesses, the jury could very readily come to the conclusion that an interior rot of such extent could have been discovered if a reasonable inspection had been made. We all believe that the matters involved were for the jury. Even if we adopt, arguendo, the theory that the court could, even where the testimony for the defense is entirely oral, enter judgment for the defendant, this would not be a proper case, for its application, for the testimony of the defendant's witnesses was not uniform and did not disclose such knowledge of the subject matter as rendered it as satisfactory and convincing as to require binding instructions.

The judgment is affirmed.