## WILD v. ATLANTIC REFINING CO.
### No. 10509.

United States Court of Appeals
Third Circuit.

Argued Jan. 8, 1952.

Decided March 17, 1952.

Rehearing Denied May 15, 1952.

B. Nathaniel Richter, Philadelphia, Pa. (Richter, Lord & Farage, Philadelphia, Pa., on the brief), for appellant.

Harry R. Axelroth, Philadelphia, Pa. (Daniel J. McCauley, Jr. and Axelroth & Porteous all of Philadelphia, Pa., on the brief), for appellee.

Before GOODRICH and HASTIE, Circuit Judges, and BURNS, District Judge.

GOODRICH, Circuit Judge.

The plaintiff as administratrix is suing for damages occasioned by the death of the decedent, her husband. The jury returned a verdict for the plaintiff and the trial judge, upon motion, set it aside and ordered judgment for the defendant n. o. v. The correctness of that action is the question on this appeal.

John Wild, a citizen of New Jersey, the decedent, was an experienced painter. He was foreman on a painting job for the Camden Painting Company, his employer. The job was the painting of the outside window sashes and exterior coping on No. 17 Boiler House of the Atlantic Refining Company, a Pennsylvania corporation, at 30th and Passyunk Avenue, Philadelphia. Mr. Wild met his death during the course of the operation. While he was walking on the sloping roof engaged in business incidental to the painting work, a portion of the roofing broke throwing the unfortunate man down to the bottom of an air shaft and inflicting injuries from which he died. No one witnessed the accident, the details concerning which are, therefore, necessarily unknown.

The question posed in the case is whether there was sufficient evidence of negligence on the part of the defendant to support the jury's verdict. In such a situation all disputes on controverted facts and reasonable inferences from the testimony must be taken in the plaintiff's favor.

The case is in federal court because of diversity only. The operative facts all occurred in Pennsylvania and Pennsylvania law governs. But there is no fundamental issue of law involved. The defendant's duty to John Wild in this case was that of an occupier of premises to one who comes on the premises for a business purpose. The duty is stated in Section 343 of the Restatement of Torts as follows:

"A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he

"(a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them, and

"(b) has no reason to believe that they will discover the condition or realize the risk involved therein, and

"(c) invites or permits them to enter or remain upon the land without exercising reasonable care

"(i) to make the condition reasonably safe, or

"(ii) to give a warning adequate to enable them to avoid the harm * * *."

This statement not only represents the general rule but has been specifically approved and adopted in Pennsylvania.[1] We have, therefore, no dispute between the parties on the rule of law which governs the case. The multitude of citations advanced by either side do not, therefore,

1. See Kulka v. Nemirovsky, 1934, 314 Pa. 134, 170 A. 261; Vetter v. Great Atlantic & Pacific Tea Co., 1936, 322 Pa. 449, 185 A. 613; Burckhalter v. F. W. Woolworth Co., 1940, 340 Pa. 300, 16 A.2d 716, and Ambrose v. Moffat Coal Co., 1948, 358 Pa. 465, 58 A.2d 20. See Eldredge, Pennsylvania Tort Law v. The Restatement, No. 33, Penna. Bar Ass'n. Quarterly, pp. 33–36 (1937).

give us any decisive help. The general principles being admitted, the problem is where this case fits in their application.

There is no question of John Wild's contributory negligence. This is out of the case by the jury's verdict in the plaintiff's favor. There is no doubt that no warning was given to Wild by any employee of the defendant to the effect that the roof was unsafe. As the trial judge puts it, "the defendant's position being that it had no knowledge of any dangerous condition, it naturally concedes that it gave no warning of such condition to the decedent or his employer." The plaintiff's expert said that, from the appearance of the roof, he, as an expert on roofs, could say that certain serious deterioration had taken place. Whether his testimony was based upon conclusions from examination of photographs or from actual inspection or both was the subject of some wrangle between counsel. At this stage of the litigation we will assume the expert was fully qualified and that he drew his expert conclusions from adequate factual observation.

The fact that, according to the plaintiff's case, only an expert could detect such deterioration to be dangerous, excuses Mr. Wild from any suggestion of assumption of risk in going on the roof as he did. The material of which the roof was made was supposed to be strong and to last for an indefinite time. Wild, therefore, did not walk into open danger. That we may take as settled. As the district court points out, this last consideration does not involve contributory negligence at all but has to do with the scope of the defendant's duty and his performance thereof.

The defendant did not know that its roof was unsafe. It owed a duty to John Wild, a business visitor, to use reasonable care either to have it safe or to give warning of unsafe conditions of which it should reasonably have known. It gave no warning. Was it remiss in due care in failing to have expert inspection of its roof so that it could have warned its business visitor of the dangerous condition? Note that the inspection would necessarily have been one for safety, not for ascertaining whether the roof was in good condition to shed snow and water.

The plaintiff, of course, argues this point in the affirmative. She says that defendant purported to act like an expert when it installed the roof in the first place with its own crew instead of hiring expert roofers to do it. But there is no showing that the laying of the roof and fastening it to iron purlins involved any type of operation that called for special expertness even though the roof was composed of a special type of material made up of asbestos and cement.

The district court following the cases which apply the Restatement in Pennsylvania differentiated the duty to inspect a roof to make sure it was in reasonable condition and the effort required for such a thing as a floor or stairway in a store where people are invited and expected to appear in large numbers.[2] He also pointed out that cases involving the duty of a landowner to those on adjoining premises or on the public highway are different. In such cases warning of a dangerous condition is not enough. The owner must use reasonable care to keep his property from coming in harmful contact with people outside it.[3]

But here we have an isolated spot on a roof which is made from material supposed to last indefinitely and to get harder and stronger as it stays. It is not a place which carries the burden of public use. Both the nature of the material and the extent of use by the public completely distinguish this case from that of Hardy v. Philadelphia National League Club, 1929, 99 Pa. Super. 326 relied on so heavily by plaintiff. The case is more like, but still not just like, Lentz v. Allentown Bobbin Works, 1928, 291 Pa. 526, 140 A. 541 where

2. Compare Clark v. Glosser Bros. Department Stores, Inc., 1944, 156 Pa. Super. 193, 39 A.2d 733 (department stores—recovery allowed) with Hotchkin v. Erdrich, 1906, 214 Pa. 460, 464, 63 A. 1035, 1036, 10 L.R.A.,N.S., 506 (inside of chimney— recovery denied). See Restatement of Torts § 343, Comment (e).

3. These cases are excellently summarized in McCarthy v. Ference, 1948, 358 Pa. 485, 494–496, 58 A.2d 49, 54–55. See Restatement, Torts, §§ 364–371.

a defective roof was involved. It is not just like this case because to discover the defect there would have required the removal of the roof.

We do not see any basis for saying that reasonable care required examination of this roof by an expert before anybody was allowed to go on it. Unless that can be said, there is nothing on which the plaintiff's case can rest. Our view of it agrees with the very thorough analysis made by the district judge. We think he was right.

The judgment of the District Court will be affirmed.