Jerome WEINKLE and Zena Weinkle

v.

David OSTERNECK.

Civ. A. No. 12607.

United States District Court
E. D. Pennsylvania.

March 26, 1956.

Nochem S. Winnet, Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., for plaintiffs.

Joseph X. Yaffe, Yaffe & Gould, Philadelphia, Pa., Nathan M. Weiss and Jerome S. Heller, New York City, of counsel, for defendants.

KRAFT, District Judge.

In their initial complaint the plaintiffs, citizens of Florida, sought to recover from the defendant, a Pennsylvania citizen, the balance claimed on a contract for the sale by plaintiffs to defendant of stock of a North Carolina corporation. Defendant's answer to this complaint denied the contract and any payment on account. Plaintiffs then filed an amended complaint of four counts. The first count reiterated the claim on the contract and the remaining three counts respectively sought recovery of the amounts of three of defendant's checks of which plaintiffs claimed to be holders in due course. Defendant's answer to the amended complaint again disavowed the contract, denied that plaintiffs were holders in due course of the three checks and asserted, inter alia, that the checks had been diverted, in bad faith, with plaintiffs' knowledge, from the expressly limited purpose for which defendant had given the checks to his nephew; and, that defendant received no consideration. Defendant filed a counterclaim for the amount of a fourth check which plaintiffs had received in the same transaction and had successfully negotiated.

Upon the trial plaintiffs abandoned their claim on the contract and the wife-plaintiff suffered a voluntary non-suit on the remaining three claims. As a result, the trial proceeded as (1) the claim of the husband-plaintiff alone against the defendant upon the three checks, and, (2) the counterclaim of defendant against both plaintiffs for recovery of the proceeds of the fourth check. The jury returned a verdict for the defendant in the husband-plaintiff's suit and a verdict for defendant against both plaintiffs on defendant's counterclaim.

Plaintiffs move to set aside the verdict and judgment against them on the counterclaim and to enter judgment thereon in their favor, or, in the alternative, for a new trial. The basis of this motion for judgment is the denial of plaintiffs' motion for directed verdict at the close of all the evidence. The reasons assigned for plaintiffs' motion for a new trial are that (1) defendant failed to prove any demand on plaintiffs for repayment of the proceeds of defendant's check; (2) the verdict was contrary to law, to the evidence, to the law and the evidence and to the weight of the evidence.

The husband-plaintiff moves to set aside the verdict and judgment in defendant's favor on the claim of the husband-plaintiff and to enter judgment in husband-plaintiff's favor or, in lieu thereof, to grant a new trial. This motion for judgment is based upon the denial of plaintiffs' motion for a directed verdict.

Defendant contends that the motions for judgment filed by the plaintiffs and by the husband-plaintiff should not be sustained because, at the close of the evidence, neither the plaintiffs nor the husband-plaintiff made any formal motion for a directed verdict, stating specific grounds therefor in compliance with Rule 50. However, plaintiffs' sixteenth point for charge, submitted at the close of the evidence, specifically requested the trial judge to charge the jury that "Under all the evidence your verdict must be for the plaintiffs." For the purposes of this opinion this request for binding instructions is treated as a motion for a directed verdict by the plaintiffs and the husband-plaintiff, though it omitted the usual formal language of such a motion and failed to state the specific grounds therefor.

No useful purpose would be served by recounting here the testimony of the parties and witnesses which, in substantial part, was sharply and irreconcilably in conflict. The jury resolved this conflict in defendant's favor.

Hence, the familiar rule must be applied that every fact which might be found or reasonably inferred from the evidence must be regarded as having been found favorably to the defendant. Wild v. Atlantic Refining Co., 3 Cir., 195 F.2d 151. Applying this rule, the jury could have found from the evidence the following facts:

That defendant, in February 1951, gave Wasman, his nephew, four undated checks payable to Wasman's order in the aggregate sum of $22,000 for the express purpose of enabling Wasman to exhibit the checks to one Kessler as the source of funds available to Wasman to pay the principal and interest upon a mortgage on Wasman's property held by Kessler's mother, due in May 1951, about the payment of which Mrs. Kessler was then already concerned; that the four checks were delivered to Wasman by defendant upon condition that the checks be used by Wasman only to pay this mortgage indebtedness, provided Wasman was otherwise unable to raise the funds for this purpose and provided further, that Wasman must obtain the defendant's approval prior to actual delivery of the checks by Wasman to Mrs. Kessler to enable defendant then to determine that he then had sufficient funds available to cover the checks before authorizing Wasman to deliver the checks in payment of the obligation due Mrs. Kessler.

That shortly after Wasman received the four checks, the husband-plaintiff saw the checks and acquired knowledge then that Wasman had the checks for the foregoing purpose upon the foregoing conditions; that the husband-plaintiff, Wasman and Kessler were then or had very recently been law partners.

That Wasman had a substantial investment in Southeastern Cabinet Company; that Wasman's investment was seriously endangered because of the doubtful financial position of the Cabinet Company; that Wasman was anxious to secure operating control of the Cabinet Company to protect his threatened investment; that Wasman was anxious to have his uncle, the defendant, buy the stock of the wife-plaintiff in the Cabinet Company to effect or, at least, advance his purpose of securing operating control and, for that purpose sent the defendant for signature three notes, dated April 16, 1951, in the amounts of $8,000, $8,000 and $9,000, respectively, together with a letter; that defendant received the letter and notes and retained the notes unsigned; that Wasman, having failed to induce the defendant to sign the notes to buy the wife-plaintiff's stock, then delivered to the husband-plaintiff a set of like notes bearing thereon forgeries of the defendant's signature as maker; that the husband-plaintiff, without knowledge that the defendant's purported notes were forgeries, agreed to deliver the stock when the notes were paid; that Wasman expected to be able to persuade the defendant to sign and forward the notes to Wasman for the purchase of the stock before the first forged note became due; that Wasman's expectation was not fulfilled and the husband-plaintiff presented the first of the forged notes for payment on its due date and payment was refused; that the husband-plaintiff thereupon telephoned defendant directly, told him that the note had not been paid and, in turn, was told by the defendant that defendant knew nothing about such notes.

That the husband-plaintiff being anxious to effect the sale of the wife-plaintiff's stock to recoup the investment in the Cabinet Company and realizing then that the notes he held must be forgeries, then told Wasman that he had talked with the defendant; that the husband-plaintiff then falsely informed Wasman that defendant had told the husband-plaintiff to tell Wasman to use the four checks to buy the stock, though defendant had not given any such instruction; that Wasman prepared a written agreement for the purchase of the stock which he signed individually and which, without authority, he signed as agent for defendant; that Wasman then dated the four checks and delivered the checks and the executed written agreement to the husband-plaintiff who caused the stock

and the forged notes to be delivered to Wasman; that Wasman thereafter secreted or destroyed the forged notes and assigned the stock, not to the defendant but to a factoring company as collateral security for the indebtedness of the Cabinet Company in an attempt to protect its financial position and his investment; that the husband-plaintiff deposited the first check for collection which the drawee bank paid without defendant's contemporaneous knowledge of its payment; that when the husband-plaintiff deposited the second check for collection the defendant's bank account lacked sufficient funds for payment; the drawee bank so notified the defendant, who then learned that the first check had been paid from his account and thereupon stopped payment on the remaining checks.

That defendant made no demand, prior to his counterclaim, for repayment by the plaintiffs of the proceeds of the first check because defendant realized that his nephew, Wasman, had issued to the husband-plaintiff notes bearing forgeries of defendant's signature and was concerned that any pressure on the plaintiffs for recovery of the proceeds of this check might provoke retaliatory action against Wasman by the plaintiffs; that Wasman had readily accepted the false statement of the husband-plaintiff that the defendant had given instructions to use the checks for the stock purchase because Wasman was himself concerned about the outstanding forged notes he had delivered to the husband-plaintiff and desired to recover possession of them; that defendant received no consideration for the four checks from Wasman or from the plaintiffs; that the defendant did not authorize or ratify delivery of the checks to the plaintiffs or to the husband-plaintiff or the use of the checks by Wassman for the stock purchase.

Upon such a factual finding from the evidence as the foregoing, the verdicts rendered would have been inevitable. The statement of facts which the jury might have found from the evidence in this case is not intended to reflect any opinion of what might be the true facts in this bitterly disputed transaction.

The reasons assigned for the plaintiffs' motion for new trial are not persuading. The verdict was not contrary to the evidence, the weight of the evidence or the law. The case was peculiarly one for jury determination. The contention that defendant failed to prove any prior demand on plaintiffs for repayment of the proceeds of the first check is unavailing. A demand before suit is necessary only when the debtor must be put in default before the cause of action can arise. Where a present liability exists the suit itself is demand. Stephens v. Pittsburgh Plate Glass Co., 5 Cir., 36 F.2d 953; Texas Water Supply Co. v. Reconstruction Finance Corp., 5 Cir., 204 F.2d 190.

Ten reasons are assigned in support of the motion of the husband-plaintiff for a new trial. The first reason, that defendant ratified the agreement for the purchase of the stock and ratified the use of his checks, is devoid of merit. The evidence on the question of ratification was wholly oral and was submitted, with suitable instructions, to the jury which found no such ratification.

The second, third, fourth and fifth reasons are that the verdict was contrary to the law, the law and the evidence, the evidence, and the weight of the evidence. The verdict was one clearly within the scope of the law and the evidence adduced at the trial. The sixth, seventh, eighth and ninth reasons relate to the refusal of certain of the plaintiffs' points for charge. The charge of the trial judge adequately covered each of the points refused (pp. 413 to 420; p. 415; pp. 405, 406, 428–429). The tenth reason assigned is the refusal of the plaintiffs' point for binding instructions. In this case it was manifest that one side or the other was somewhat less than candid. It was the duty of the jury to reconcile the evidential conflicts to the extent that they were

susceptible of reconciliation and, to the extent that they were irreconcilable, it was solely the jury's function to determine what was the truth.

Accordingly, the 26th day of March, 1956, it is ordered that (1) the motions of the husband-plaintiff for judgment and for new trial are dismissed; and (2) the motions of the plaintiffs as defendants in the counterclaim for judgment and for new trial are dismissed.