WINNIE TOLBERT ET VIR V. STANDARD ACCIDENT INSURANCE COMPANY.

No. A-2195. Decided October 5, 1949.
Rehearing overruled November 2, 1949.
(223 S. W., 2d Series, 617.)

236

*Jas. S. Grisham* and *J. A. Lantz*, both of Dallas, for petitioners.

The Court of Civil Appeals erred in holding that the indemnity contract was binding upon Mrs. Tolbert, for the reason that the obligation, if any, imposed upon the signers of the indemnity contract was not such an obligation as a married woman was authorized by law to undertake. Red River Natl. Bank v. Ferguson, 109 Texas 287, 206 S. W. 923; Johnson v. Darr, 114 Texas 516, 272 S. W. 1098; State v. Yturria, 109 Texas 220, 204 S. W. 314.

*Cole, Patterson, Cole & McDaniel* and *Jesse W. McDaniel,* all of Houston, for respondent.

In answer to petitioners' contentions cites Lee v. Hall Music Company, 119 Texas 547, 35 S. W. (2d) 685; McIlhenny v. Eldridge, 235 S. W. 244; and Elliott v. Lester, 126 S. W. (2d) 756.

MR. JUSTICE BREWSTER delivered the opinion of the Court.

This is a suit on an indemnity contract filed by Standard Accident Insurance Company, respondent, against W. F. Warfield & Co., a corporation, one Abney as Administrator of the estate of W. F. Warfield, deceased, and Mrs. Winnie Tolbert and her husband, J. R. Tolbert. Only Mrs. Tolbert appealed from a trial court judgment for respondent, which was affirmed by the Court of Civil Appeals. 218 S. W. (2d) 488. So she is the petitioner here.

W. F. Warfield & Co. was engaged in construction work and respondent was going surety on performance bonds to guarantee the execution of its contracts. W. F. Warfield was president of Warfield & Co., and petitioner was his wife.

On April 28, 1937, Warfield and petitioner executed in favor of respondent a "general contract of indemnity", which recited that respondent might thereafter be requested to execute "certain obligations of suretyship" for Warfield & Co. and undertook to define the liability of the signers to indemnify respondent against losses it might suffer by reason of any such suretyship. Among other things, the signers, described as "Indemnitor", agreed to perform all the conditions of any performance bond upon which respondent should become surety and "at all times indemnify and save the Surety harmless from and against every claim, demand, liability, cost, charge, counsel fee (including fees of special counsel whenever by the Surety deemed necessary), expense, suit, order, judgment and adjudication whatsoever, and will place the Surety in funds to meet the same before it shall be required to make payment." Although the contract recited that it was signed by Warfield & Co., that company did not join in its execution.

On August 3, 1939, W. F. Warfield was divorced by petitioner, who later married J. R. Tolbert. Warfield died in 1946.

On September 8, 1939, Warfield & Co. contracted with Ball Construction Co. to do certain construction work in connection with a housing project in Houston; and, as the contract required, Warfield & Co., as principal, and respondent, as surety, executed

a bond in the sum of $57,000 conditioned on faithful performance by the former of its contract. Warfield & Co. defaulted in part and respondent was required to put up $19,485.07 to complete the work. This suit is to recover that amount with interest and attorneys' fees.

■ Among other defenses, Mrs. Tolbert pleaded that since she was a married woman at the time she signed the indemnity contract its obligation was one which she was not authorized by law to undertake. Our conclusion on that point disposes of the case.

Decision turns on the proper construction of the second sentence of Art. 4623, R. S., 1925, which article provides: "Neither the separate property of the husband nor the community property other than the personal earnings of the wife, and the income, rents and revenues from her separate property, shall be subject to the payment of debts contracted by the wife, except those contracted for necessaries furnished her or her children. *The wife shall never be the joint maker of a note or a surety on any bond or obligation of another without the joinder of her husband with her in making such contract.*" (Italics ours.) Thus it is manifest that petitioner's defense must fall if her contract as indemnitor can properly be regarded as one of suretyship.

With the adoption of the common law as the rule of decision in this State, in 1840, our married women were rendered unable to bind themselves by contract. Kavanaugh v. Brown, 1 Texas, 481. And, although by statute we retained the Spanish law rule that the wife can own property, our adoption of the common law meant that she can contract with respect to it or otherwise only for a purpose pointed out by law and only in such manner as our statutes may permit. Graham et al v. Struve et al, 76 Texas, 533, 13 S. W., 381; Speer's Law of Martial Rights (3rd Ed.), Sec. 167, p. 226.

By section 4 of "An Act Defining the Marital Rights of Parties", passed in 1848, the enforceability of debts contracted by the wife for necessaries furnished her or her children or for the benefit of her separate estate was recognized, provided she was sued jointly with her husband. Under Sec. 5, of the act, execution could be levied upon either the community property of the parties or the separate property of the wife, at the discretion of the creditor. Gammel's Laws of Texas, Vol. 3, p. 77. The limitations thus fixed remained the law in Texas for 65 years. See Arts. 4621, 4622 and 4624, R. S. 1911. Reciting in the

emergency clause, "The fact that the present law denies to married women the right to manage their separate property and to make contracts is unjust to a large number of citizens of this State," the legislature, in 1913, passed an act designed substantially to enlarge the wife's contractual powers. Acts 33rd Leg., R. S., chap. 32, p. 61. Art. 4623, supra, is a part of that act and it was first construed by this court in Red River National Bank v. Ferguson, 109 Texas, 287, 206 S. W., 923.

In that case it was sought to hold the wife on a note which she had signed as surety for her husband. In holding that she was not liable, this court reviewed the history of the Act of 1913 both as it was attempted to be passed and as it was finally enacted. As originally passed, Art. 4623 (then 4624) read: "The wife may make any contract which she would be authorized to make but for her marriage, except those herein or elsewhere forbidden, and her coverture shall never be a defense in any suit or action based on such contract, but suits may be brought thereon in the manner prescribed by Articles 1840 and 1841 (that is, by joint suit). Provided, however, that neither the separate property of the husband nor the community property other than the personal earnings of the wife, and the income, rents and revenues from her separate property shall be subject to the payment of debts contracted by the wife, except those contracted for necessaries furnished her or her children: Provided, the wife shall never be the joint maker of a note or a surety on any bond or obligation of another without the joinder of her husband with her in making such contract." So worded, the act was sent to the Governor but was recalled by joint resolution before he had acted on it. In returning the bill the Governor made strong objection to its first sentence giving the wife broad powers to contract as a feme sole. Upon reconsideration the Legislature struck that language and passed Art. 4623 as it now reads.

After noting the fact that both in its original effort to give the wife general power to make contracts as well as in the act as finally passed, the Legislature placed the same limitation on her power to become a surety, this court said with respect to our policy of limiting the wife's contractual powers, "If her powers have been restricted, her property, at least, has been safeguarded. The limitations upon her authority are but the expression of a scrupulous concern for the preservation of her estate, and were imposed to that end. In that interest her authority to contract debts at all was confined to those essentially to her advantage, that is, for necessaries for herself or her

children and the benefit of her estate, with a court, in all suits against her for such debts, charged with the duty of seeing that they were actually incurred for those purposes and were reasonable and proper."

Then, with particular reference to the suretyship proviso of Art. 4623, supra, this court said: "This is a restrictive clause, —a purely negative provision. It does not purport to confer upon the wife any express authority. Such as it does confer is only by implication. * * * This was the conferring of an original power—one with which she was not theretofore invested. In such cases, the maxim, 'expressio unius est exclusio alterius,' has marked application."

Under that principle, if suretyship and indemnity are different things, if they do not signify substantially the same legal relationship, when Art. 4623, supra, mentions the one it excludes the other. And when it empowers the wife to become a surety if joined by her husband, it excludes any idea that she could so become an indemnitor; as to that relationship it leaves her where she has always been at common law. Respondent accepts Red River National Bank v. Ferguson, supra, as correct. In fact, it urges it as authority for the proposition that a wife is bound by her suretyship contracts, insisting that although the contract described petitioner as an indemnitor she was never-the less a surety because she thereby bound herself to answer for the debt, default or miscarriage of Warfield & Co. It argues that the issue is to be determined not by the type of instrument she executed but by the capacity in which she executed it.

■ As already stated, Warfield & Co. did not execute the indemnity contract; only petitioner and Warfield signed it. Under its terms petitioner agreed that she would indemnify respondent and save it harmless from all liability which it might incur by thereafter becoming surety on any performance bond executed by Warfield & Co. as principal, even binding herself to provide the funds to discharge any such liability before respondent should be required to pay. In that agreement are found essential characteristics that distinguish indemnity from suretyship. "The contract of indemnity is an original one, while that of suretyship is an accessory undertaking presupposing some contract or transaction to which it is collateral. An indemnitor by his contract agrees to save another harmless from the legal consequences of the conduct of one of the parties or of some other person, whereas a surety undertakes to pay if the principal does not. Their agreements differ in legal effect. Recovery can

be had from an indemnitor against loss and damage to the obligee only when such loss or damage has actually occurred; but a surety becomes liable and may be proceeded against as soon as the debt of the principal matures and is unpaid, because the failure to pay is a breach of the suretyship agreement." 50 Am. Jur., Suretyship, Sec. 8, p. 909. A surety makes a direct promise to perform the principal's obligation if he fails to perform it as he agreed to do; an indemnitor obligates himself to reimburse the indemnitee for loss suffered or to save him harmless from liability, but he never agrees directly to perform the obligation indemnified. Suretyship requires three parties, while indemnity requires only two. 42 C. J. S., Indemnity, Sec. 3, p. 567.

While it is true, as respondent insists, that the authorities sometimes define suretyship in what they call its "broadest" sense as including other legal relationships, such as indemnity, it is so defined under fact situations where suretyship and such other legal relationships have common legal effects as to obligations on the one hand or rights on the other. But the fact that suretyship and indemnity have common aspects (such as the right to go against the person in default for reinbursement) does not in any sense destroy the essential difference between the two as those differences have been pointed out above; and when those differences are involved suretyship and indemnity cannot be regarded as one and the same thing.

Here we do not have a married woman agreeing to a contingent liability for a fixed amount on a contract in existence when she signs it, as in suretyship. What we do have is an agreement whereby petitioner is to save respondent harmless on suretyships to be entered into by respondent in the future for Warfield & Co., without any limitation either as to the number or amount of such engagements and without any knowledge or means of knowledge on the part of petitioner or anybody else as to what her liability might amount to. Surely Art. 4623, supra, contemplated no such situation by the phrase "surety on any bond or obligation of another." So we are forced to the conclusion that when this statute conferred upon the wife, by implication only, the original power of suretyship, the Legislature used the term *surety* in its strict and commonly accepted sense and meant to exclude other relationships, such as indemnity, although they may have some characteristics that go also with suretyship. No more can fairly be presumed from words of doubtful import. Red River National Bank v. Ferguson, supra. To hold otherwise would be to change the existing

common law rule by doubtful implication, which we are not authorized to do, in the absence of an obvious legislative intent to the contrary. 50 Am. Jur., Statutes, Sec. 346, p. 341. It would be to ignore the public policy of this state, continuously maintained since 1840, that in the absence of statutory authorization for a wife to make contracts, they are voidable at her option.

As to petitioner, Mrs. Winnie Tolbert, only, both judgments below are reversed and judgment is here rendered in her favor. Otherwise, the trial court judgment is not affected by this order.

Opinion delivered October 5, 1949.

Rehearing overruled November 2, 1949.