## TEXAS WATER SUPPLY CORP. et al. v. RECONSTRUCTION FINANCE CORP.

No. 14187.

United States Court of Appeals
Fifth Circuit.

April 21, 1953.

192

Joseph W. Cash and Orin H. Bonney, Houston, Tex., for appellants.

Raymond A. Cook, Houston, Tex., Andrews, Kurth, Campbell & Bradley, Houston, Tex., of counsel, for appellee.

Before HUTCHESON, Chief Judge, and HOLMES and RIVES, Circuit Judges.

RIVES, Circuit Judge.

This was an action on a promissory note by the Reconstruction Finance Corporation against the Texas Water Supply Corporation and on a guaranty contract against A. E. Fawcett, Jr., and L. M. Fawcett. The issues on this appeal relate first to the personal liability of the guarantors, and second to the Texas Corporation's counterclaim.

The note was executed September 30, 1942, in the principal amount of $30,950.00 payable ninety days after date and signed for the maker, the Texas Corporation, by its President, A. E. Fawcett, Jr., and its Secretary, L. M. Fawcett. On the same date as the note, the guaranty contract was executed by A. E. Fawcett, Jr., and L. M. Fawcett individually. On the back of the note are several entries of partial payments of principal and interest and the following notation:

"12-29-42 'The time of payment of the balance of the principal and Interest on this Note is hereby extended so that it shall become due and payable on or before March 30, 1943'."

By the terms of the note, the maker bound itself also to pay "any and all other indebtedness of the undersigned to Payee, * * * now due or hereafter to become due and whether heretofore or contemporaneously herewith or hereafter contracted, and whether arising by operation of law, or out of the same or different transactions between the parties hereto, or between others."

On February 4, 1943, a formal "extension agreement" was executed between the Texas Corporation acting by the two Fawcetts as its officers and the Reconstruction Finance Corporation extending the maturity of the note to March 30, 1943. That agreement recited: "Whereas, Texas Water Supply Corporation has asked for an extension of the time of payment of said note, which has been granted by the payee". The guarantors, the Fawcetts as individuals, did not join in this "extension agreement". No demand was made upon the guarantors before this action was commenced on March 28, 1947.

Appellants insist with much force that, according to the terms of the guaranty, the guarantors promised to pay "immediately upon the written demand of Reconstruction Finance Corporation", and that demand against the guarantors before suit was required. They rely principally upon First National Bank of Waterloo v. Story, 200 N.Y. 346, 93 N.E. 940, 943, 34 L.R.A., N.S., 154, 21 Ann.Cas. 542, in which case it was stated that:

"upon principle as well as authority the following propositions should be announced as the law:

"(1) When the promise is to pay one's own debt for a specified amount on demand, no demand need be alleged or proved.

"(2) When the promise to pay on demand is not to pay one's own debt, but is a collateral promise to pay the debt of another, a demand is necessary, for it is part of the cause of action."

See also cases collected in the annotations in each of the two annotated reports of that decision, and see Nelson v. Bostwick, 5 Hill 37, 40 Am.Dec. 310.

The rule generally as to the necessity of demand before suit has been well stated both by the Court of Civil Appeals of Texas and by this Court. "When an obligation to pay is complete, a cause of action at once arises, and no formal demand is necessary. Ballew v. Casey, 60 Tex. 573." Green v. Scales, Tex.Civ.App., 219 S.W. 274, 275. "A demand before suit usually is necessary only when the debtor must be put in default before the cause of action accrues. Where there is a present liability the suit is itself a sufficient demand." Stephens v. Pittsburgh Plate Glass Co., 5 Cir., 36 F.2d 953.

As to contracts, we think the full rule is best set forth in Restatement, Contracts, Sec. 264, as follows:

"264. Promises Conditional on Demand.

"Where a contractual promise to pay money is in terms performable on demand by the promisee, but the duty of performance is otherwise unconditional, and neither more specific words nor usage requires a different result, a right of action by the promisee is not conditional on a demand being made.

"Comment:

"A. Generally there can be no right of action on a contractual promise in terms conditional until all the facts stated as conditions have happened or been performed. But a peculiar rule prevails in regard to promises to pay money debts on demand. Such a promise to pay one's own money debt is regarded as unconditional unless the parties by some more express language indicate a contrary intention, or unless usage as in the case of bank deposits prescribes a different rule. In other promises in terms conditional on demand, no duty of immediate performance arises without a demand, and even in such promises to pay one's own money debt, interest is allowed as damages only from the making of a demand (See Sec. 337)."

See also, I Am.Jur., Actions, Sec. 36; 1 C.J.S., Actions § 27.

The note and the guaranty contract were executed simultaneously. The guarantors were the corporate officers who signed the note, and, except for one qualifying share, were all of the stockholders of the corporation. The note was for a definite amount payable ninety days after date. The guarantors "unconditionally guaranteed" payment of the debt. Most significant is the entire sentence in which the requirement for demand relied on is

194

included: "In case the Debtor shall fail to pay all or any part of the Liabilities when due, whether by acceleration or otherwise, according to the terms of said note, the undersigned, immediately upon the written demand of Reconstruction Finance Corp., will pay to Reconstruction Finance Corp. the amount due and unpaid by the Debtor as aforesaid, in like manner as if such amount constituted the direct and primary obligation of the undersigned." Considering the contract, and all of the surrounding circumstances, we think that the rule to be applied should be the same as if the note were the direct and primary obligation of the guarantors and, hence, that no demand before suit was necessary. The suit itself was sufficient demand.

██ The guarantors, the Fawcetts individually, contend that, since they signed the extension agreement as officers of the Corporation and did not join individually, they as individuals are not bound by the extension of the due date of the note. When the note and the guaranty are read together, it is clear that the guarantors undertook to pay not only the principal sum of the note at its maturity, but any indebtedness theretofore or thereafter contracted, whether arising out of the same or different transactions. Under the terms of the note and guaranty, the guarantors were bound by any extension or modification of the note. It follows that this action was filed within the statutory period of limitation after the accrual of the cause of action against the guarantors.

L. M. Fawcett was the wife of A. E. Fawcett, Jr., and claims that she was prohibited by the laws of the State of Texas from binding herself on the contract of guaranty. She concedes that a married woman is authorized by statute to become a joint maker of a note or a surety on the bond or obligation of another, provided that her husband joins her in making the contract of suretyship; but argues that the word "surety" as employed in the statute, Article 4623, Texas Revised Civil Statutes, excludes the kind of contract labeled in this case a "guaranty". The distinction between "surety" as used in this statute and "indemnity" was carefully pointed out

by the Supreme Court of Texas in Tolbert v. Standard Accident Insurance Co., 148 Tex. 235, 223 S.W.2d 617, 620. Among other things, it was said that suretyship presupposes a contract or transaction to which it is collateral; that the surety undertakes to pay if the principal does not; and that the surety becomes liable as soon as the debt of the principal matures and is unpaid.

"A surety makes a direct promise to perform the principal's obligation if he fails to perform it as he agreed to do; an indemnitor obligates himself to reimburse the indemnitee for loss suffered or to save him harmless from liability, but he never agrees directly to perform the obligation indemnified. Suretyship requires three parties, while indemnity requires only two." Tolbert v. Standard Accident Insurance Co., 148 Tex. 235, 223 S.W.2d 617, 620.

We find in 24 Am.Jur., Guaranty, Sec. 10, the following statement: "The contract of suretyship is in some situations not distinguishable from the contract of guaranty. This is generally, if not invariably, true where the contract of guaranty is absolute or unconditional, binding the guarantor to pay a definite sum at a specified time."

██ Considering this note and guaranty and all of the surrounding circumstances, we are of the clear opinion that L. M. Fawcett was bound certainly as a surety, if indeed not as virtually a joint maker of the note.

██ The amount borrowed from the Reconstruction Finance Corporation was to assist the Texas Corporation in financing the completion of a number of well drilling contracts, and those contracts were assigned to Reconstruction Finance Corporation as security. With respect to some of the contracts discussed by the district court in its memorandum opinion, no question is raised on appeal. But the counterclaim, as still insisted on, involves contract and tort claims of the Texas Water Supply Corporation against the Defense Plant Corporation, merged in to the appellee, R. F. C., on June 30, 1945, 15 U.S.C.A. §§ 618, 619, arising out of two drilling contracts, one referred to in the Record as the "Texas

City job" and the other as the "Austin job". On the "Texas City job" the claim seems to be that the Defense Plant Corporation was responsible for the rig being insecurely fastened and that during a storm in 1943 the rig was blown over and damaged. The first time that this counterclaim was set up in any manner [1] was on June 1, 1951, eight years after the occurrence, and it is clearly barred by the Texas two year statute of limitation, Vernon's Ann. Civ.Stat. art. 5526.

On or prior to January 26, 1942, the Austin Company, as general contractor, entered into a contract with Defense Plant Corporation and International Minerals & Chemical Corporation for the construction of a magnesium plant near Austin, Texas; and the Austin Company, as general contractor, entered into a contract with Texas Corporation, as sub-contractor, for the drilling of two water wells in connection with the construction of the magnesium plant. Four holes were drilled by the Texas Corporation to develop the existence and productivity of water bearing sands. Water was found in hole number one, holes numbers two and three were dry holes, and when hole number four reached a depth of approximately 514 feet, the parties became involved in such disputes and controversies as produced the stoppage of the work under the contract. Under date of January 21, 1943, approximately one year after the original contract, the parties entered into an amendment and modification of that contract and an agreement of accord which recited the dispute and stoppage of work and provided for the remaining work to be done, such as constructing a foundation for well number one, drilling of hole number four to greater depth, and further provided, "In consideration of the foregoing each party hereto relinquishes, waives, releases and gives up any and all rights, defenses, forfeitures, claims or breaches which it has heretofore asserted".

■■ The Texas Corporation says that this accord is invalid for lack of consideration, but it is well settled, of course, that a

bona fide dispute is sufficient consideration for an agreement of accord on an unliquidated demand, 1 Am.Jur., Accord and Satisfaction, Secs. 60 and 61. Nor do we think that there was any failure of consideration, for it clearly appears that the mechanic's lien claims were paid as required by the contract.

■ The Texas Corporation claims also that the alleged accord was invalid because of fraud or undue influence or threats of the R. F. C. to "tie up" the assets of the Texas Corporation. We do not, however, find any averment that the R. F. C. threatened to do any more than it was authorized to do under the elaborate provisions of the note, collateral assignments, and guaranty agreement. The claimed fraud is not averred with the particularity required by Rule 9(b), Federal Rules of Civil Procedure, 28 U.S.C.A.

The Texas Corporation insists, however, that there are some claims included in the counterclaim under the Austin job based on matters subsequent to the accord. The accord settled claims between the parties asserted up to its date, January 21, 1943, but not those thereafter arising. The Record is not as clear as it should be, but it seems to us that it is true that parts of the counterclaim under the Austin job are alleged to have arisen subsequent to the date of the accord; for example, the claim that the Defense Plant Corporation had wrongfully seized and retained pipe and equipment on the Austin job of the value of $1686.50, and the claim for overtime work, a portion of which appears to be attributable to work performed after the date of the alleged accord. The appellee refers to such claims as "fringe claims" and, in addition to insisting that they were foreclosed by the accord, claims that they were barred by the Texas four year statute of limitation.

■ The Texas Corporation does not clearly insist, and if it did the insistence would not be good, that the claims included in its counterclaim are of such "intrinsically defensive nature" as to be withdrawn

---

[1]. This counterclaim was not involved in Civil Action 203 pending in the Western District of Texas when this action was

commenced, and which is hereinafter discussed.

from the statutes of limitation by the rule prevailing in Texas.[2] At the time this action was filed on March 28, 1947, there was pending in the Western District of Texas Civil Action 203 filed in January, 1944, by a supplier against the surety for the Texas Corporation on the Austin contract. The Texas Corporation, upon being impleaded in that action, filed a "cross-claim" against Reconstruction Finance Corporation and others insisting on the same matters as in the counter-claim here relied on. The original answer and "cross-claim" filed in the instant action on April 16, 1947, simply avers that:

> "Plaintiff Reconstruction Finance Corporation is indebted to the Texas Water Supply Corporation as set forth in the Original Answer and Cross-claim of the Texas Water Supply Corporation filed in Civil Action No. 203 pending in the District Court of the United States for the Western District of Texas, Austin Division, in the sum of $42,094.89, reference to the original answer and cross-claim of Texas Water Supply Corporation in said cause of action being hereby referred to and made a part of this original answer and cross-claim for all purposes."

There was no further elaboration of the facts as they were alleged in the answer and cross-claim in said Civil Action 203. The cross-claim in that action was dismissed by that court on August 18, 1947. The Texas Corporation then delayed nearly four years or until June 1, 1951, before filing its amended counterclaim in this action, alleging the facts theretofore alleged in said Civil Action 203.

Relying upon the "notice" theory of pleading, the Texas Corporation insists that the effect of its pleading the pendency of said Civil Action 203 in its original answer and cross-claim was to toll the statute of limitation. It insists further that under Rule 13(a), Federal Rules of Civil Procedure, the matters were compulsory counterclaims which need not be stated because they were the subject of another pending action. We do not think that it is necessary to pass upon either of these contentions because neither of them would toll the statute of limitation beyond August 18, 1947, the date on which the cross-claim filed by the Texas Corporation in said Civil Action 203 was dismissed. By waiting from the time of such dismissal until June 1, 1951, before filing its amended counterclaim in this action, the Texas Corporation permitted the bar of the statute of limitation to become complete on those parts of the counterclaim not already foreclosed by the accord.

Clearly the original answer and "cross-claim" filed in this action on April 16, 1947, did not sufficiently set forth the counterclaim by the mere reference to said Civil Action 203. Rule 10(c), Federal Rules of Civil Procedure, permits references to pleadings and exhibits in the same case, but there is no rule permitting the adoption of a cross-claim in a separate action in a different court by mere reference. The "notice" theory of pleading cannot strike from Rule 8(a), Federal Rules of Civil Procedure, the plain and definite requirement that "A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain * * *

2. "It is the law of this state that where the subject-matter of a defense interposed by the defendant constitutes an independent cause of action which does not go to the foundation of the plaintiff's demand, it cannot effect a reduction of the amount of the plaintiff's recovery except by way of set-off, and the statutes of limitation are available to the plaintiff in respect to such defense. Nelson v. San Antonio Traction Co., 107 Tex. 180, 175 S.W. 434. On the other hand, if the subject-matter of the defense be of an intrinsically defensive nature, which, if given effect, will operate merely as a negation of the plaintiff's asserted right to recover, or in abatement, either wholly or partially, of the amount claimed, the statute of limitation does not apply. Mason v. Peterson, Tex.Com. App., 250 S.W. 142." Morriss-Buick Co. v. Davis, 127 Tex. 41, 91 S.W.2d 313, 314. See also, Pennsylvania Railroad Co. v. Miller, 5 Cir., 124 F.2d 160, 140 A.L. R. 811; Tulsa Rig, Reel & Mfg. Co. v. Cameron-Flint Lumber Co., 5 Cir., 80 F.2d 602; Texas cases collected in Annotation in 1 A.L.R.2d 673–675.

a short and plain statement of the claim *showing that the pleader is entitled to relief * * *."* (Emphasis ours.) The mere reference in this case to the other action did not so show. We conclude, therefore, that such parts of the Texas Corporation's counterclaim as were not foreclosed by the accord were barred by the Texas statute of limitation. The judgment is therefore

Affirmed.