**BILL CURPHY CO. v. ELLIOTT et al.**

**No. 14259.**

United States Court of Appeals
Fifth Circuit.

Sept. 9, 1953.

Curtis White, Dallas, Tex., and William R. Sarsgard, Fort Worth, Tex., for appellant.

Charles Stephens, J. A. Gooch, E. G. Aycock, Fort Worth, Tex., Walter A. Cober, Grand Prairie, Tex. (Cantey, Hanger, Johnson, Scarborough & Gooch, Fort Worth, Tex., of counsel), for appellees.

Before HOLMES, BORAH, and RIVES, Circuit Judges.

BORAH, Circuit Judge.

This case presents two questions: (1) whether a surety on a performance bond, which guaranteed the completion of a subcontractor's share of a public works contract can be held liable upon default of the obligee of the bond in excess of the face amount of the bond and, (2) whether a claim for money loaned a subcontractor for payment of labor and materials is within the coverage of a contractor's bond conditioned upon payment to all persons supplying labor and material in the prosecution of the work. For the reasons hereinafter stated our answer to both questions is no. After stating the case, we shall discuss these questions seriatim.

On or about February 8, 1951, appellant, Bill Curphy Company, entered into a construction contract with the United States of America under the terms of which it agreed to perform the work of clearing land for the Benbrook Dam and Reservoir in Tarrant County, Texas. In connection with this contract appellant executed as principal with Aetna Casualty and Surety Company as its surety the required payment and performance bonds as required by 40 U.S.C.A. § 270a guaranteeing that it would complete the work according to the contract and specifications and that it would pay labor bills incurred by it and its subcontractors in the completion of the work.

On March 23, 1951, appellant sublet the decking, burning and final cleanup work under its contract with the Government to J. S. Elliott and J. S. Elliott, as principal, and Houston Fire and Casualty Insurance Company, as surety, executed a performance bond in the amount of $4,950 binding themselves unto appellant that J. S. Elliott would promptly and faithfully perform his contract with appellant.

Elliott began work under his subcontract and at first progressed satisfactorily. Later on he began to fall behind in his work. This delay was attributable in part to the fact that Vickers, the other subcontractor on the job, did not in many instances cut the trees close to the ground in accordance with contract specifications, in consequence of which Elliott's tractors and equipment frequently sustained damage in passing over the high stumps and had to be laid up for repairs. On July 2, 1951, appellant advised Elliott by letter that his work and operations were not meeting the requirements of the subcontract and that unless the situation was corrected within the next few days appellant would take whatever action it deemed necessary to correct his failure to prosecute the work in the prompt and diligent manner required by his subcontract. On July 3, 1951, appellant formally advised Houston Fire and Casualty Insurance Co. by letter of its written notice to Elliott and said, "The five days notice is in accordance with our contract with Mr. Elliott, and

will expire Friday, July 8, 1951. If improvement is not shown in the progress and character of his work by that date, we must formally notify you that J. S. Elliott is in default of his contract with our company." On the night of July 6, 1951, appellant wrote a letter to Elliott formally declaring the subcontract to be in default. This letter reads in part as follows: "The five days notice given by our company July 2, 1951, expires today * * * We therefore must notify your bonding company that your subcontract is declared in default, and ask them to take appropriate action in accordance with their obligations under the surety bond furnished our company. * * *" A copy of this letter to Elliott was sent to Houston Fire and Casualty Insurance Co. in a cover letter of even date. In this cover letter the surety was personally notified of its principal's default and was asked "to take immediate steps to perform his subcontract * * * as you are required to do under the surety bond you furnished our company". However, on the following morning and before the surety had received this letter and before the expiration of its five-days written notice appellant for reasons self sufficient decided to speed up matters and stepped in and took over the job. Appellant did not ask the surety to take bids or submit bids to it, but prematurely exercised the right it had under its contract with Elliott to take over and complete the performance of his contract. The job was completed on July 13, 1951, and thereafter accepted by the Government.

On September 29, 1951, appellant brought this suit in the District Court against J. S. Elliott, Houston Fire and Casualty Insurance Co., H. W. Dennis and others. In the complaint it was alleged that Elliott defaulted on his contract and that although Houston Fire and Casualty Insurance Co. had been called upon to complete the contract, it failed and refused to do so and appellant had to complete it at a cost of $6,227.82 and that there was in addition to that some $11,000 in unpaid bills incurred by El-

liott for which claims under the Miller Act [1] were being asserted against the appellant. It was also alleged that appellant had been compelled to pay $1,750 to the Government as liquidated damages for failure to complete the subcontract on time, and that this expense was rightfully chargeable to Elliott and his surety. Appellant asked the court to determine what it owed, if anything to those named in the suit, including H. W. Dennis, who were asserting claims under the Miller Act, to add these sums to the cost of completion of the subcontract with Elliott, and give it judgment against Elliott and his surety for such amount.

The case was tried to the court without a jury, appropriate findings of fact and conclusions of law were made and based thereon judgment was rendered against Elliott for $13,908.84; against Houston Fire and Casualty Insurance Co. for $4,950, the face amount of its bond; and judgment was rendered in favor of H. W. Dennis for $700 against appellant and its surety, Aetna Casualty & Surety Co.

The first question to determine on this appeal is whether the court below correctly held that the liability of the surety was limited to the amount stated on the face of the bond. In the resolution of this question, we must of necessity examine the terms of the performance bond as the obligation of the surety can only be measured and determined thereby. The first paragraph of the bond recites that we J. S. Elliott as principal, called "contractor" and Houston Fire and Casualty Insurance Co. as surety are bound unto Bill Curphy Company as obligee, called "owner" in the amount of $4,950. Paragraph two recognizes the existence of the outstanding written agreement between the contractor and the owner; and then follows this language:

"Now, Therefore The Condition Of This Obligation is such that, if Contractor shall promptly and faithfully perform said Contract, then this obligation shall be null and

1. 40 U.S.C.A. §§ 270, 270b.

void; otherwise it shall remain in full force and effect.

"Whenever Contractor shall be, and declared by Owner to be in default under the Contract, the Owner having performed Owner's obligations thereunder, the Surety may promptly remedy the default, or shall promptly

"(1) Complete the Contract in accordance with its terms and conditions, or

"(2) Obtain a bid or bids for submission to Owner for completing the Contract in accordance with its terms and conditions, and upon determination by Owner and Surety of the lowest responsible bidder, arrange for a contract between such bidder and Owner and make available as work progresses * * * sufficient funds to pay the cost of completion less the balance of the Contract price; but not exceeding, including other costs and damages for which the Surety may be liable thereunder, the amount set forth in the first paragraph hereof. * * *"

Appellant contends that since the undisputed evidence showed that the surety had violated the condition of its performance bond which guaranteed completion of the contract of Elliott, it was entitled to recover a judgment against surety in an amount equal to the total cost of completion incurred by appellant, to wit: $16,785.14. As grounds for its contention appellant argues that the bond places no limitation whatever as to amount upon the absolute duty to complete the contract, unless the surety shall elect to submit bids, which it did not do. And in an effort to justify this dogmatic statement it is asserted that the very fact that there is a limitation of amount in connection with the submitting of bids clause, would justify, if not compel, the interpretation that it was intended that the surety should complete the contract regardless of cost.

■■ We cannot agree with this contention for several reasons. In the first place appellant's construction of the completion clause is not only illogical but it does violence to grammatical rules of construction as should be apparent to one who reads the bond contract with a consciousness that punctuation marks have significance in ascertaining the meaning of the language employed. If appellant's contention that the surety's liability may exceed the sum stated on the face of the bond is correct, and it is not, it would be futile to state any amount of liability in the bond. This contention completely overlooks the well-established rule in Texas and elsewhere that the sole object of stating the penalty in a bond is to fix the limit of the liability of the signers, and no recovery can be had on such bond against the principal or surety beyond the penalty named in the bond. Ferguson v. Ferguson, Tex.Civ.App., 69 S. W.2d 592; Brown v. National Surety Corp. of New York, 207 S.C. 462, 36 S.E. 2d 588; Massachusetts Bonding & Ins. Co. v. United States, 9 Cir., 97 F.2d 879, 881; 7 Tex.Jur. 109, Sec. 43; Witter v. Massachusetts Bonding & Insurance Co., 215 Iowa 1322, 247 N.W. 831, 89 A.L.R. 1071.

It is true that surety made a direct promise to perform Elliott's obligation if he failed to perform it as he agreed to do. But such was to be expected from the nature of the contract as a surety always makes a direct promise to perform the obligation guaranteed by the contract of suretyship. Such a condition, as a portion of the defeasance clause, only defined surety's obligation and the effect of its incorporation in the bond was to give surety the option of completing the contract if it so desired rather than being held absolutely liable in the event Elliott failed to complete it.[2] If, therefore, surety breached a condition of the bond it was liable in damages for the breach but it was no more liable than it would be for the original breach by Elliott and under no circumstances could

2. Sutherland, Damages, Vol. 2, 4th Ed., § 478.

it be held in an amount greater than the penal sum of the bond.

■ In Trainor Co. v. Aetna Casualty Co., 290 U.S. 47, 54 S.Ct. 1, 78 L.Ed. 162, as in the instant case, suit was brought to recover damages for the breach of a bond of suretyship which guaranteed the performance of a building contract. In considering this question the Supreme Court applied the Pennsylvania rule as stated in Purdy v. Massey, 306 Pa. 288, 159 A. 545, wherein, as in Tolbert v. Standard Accident Ins. Co., 148 Tex. 235, 223 S.W.2d 617, the court recognized the well-established distinction between an affirmative covenant for a specified thing and one of indemnity against damage by reason of the nonperformance of the thing specified. The applicable rule was thus stated:

"In fixing compensation for damage resulting from breach of a contract, the general rule is that the injured party should be placed in the same position as if there had been no breach. The object of the law is to place such party in as good position as if the contract had been kept. In the instant case, the bond guaranteed the completion of the building; if there had not been a breach of the obligation of the bond, the building would have been erected. Since this was not done, the plaintiff can only be put in as good position as if the contract had been carried out by giving her the cost of construction, not exceeding, of course, the amount of the bond. * * *" [306 Pa. 288, 159 A. 547.]

In the light of these authorities we think it plain, and hold, that the incorporation of the covenant in the performance bond as a condition of the defeasance clause obligating surety to complete the work did not operate to increase the liability of the surety beyond the penal sum stated in the bond.

Appellant next contends that if it is not entitled to recover the full amount of its loss from surety then, in that event, it is entitled to recover the full amount of the subcontract price which is $9,900. While we believe that what we have just said in discussing appellant's first point effectively disposes of this contention there are other and further reasons which warrant its rejection.

Appellant's second point raises certain questions as to the construction of the terms of the bond. Citing 10 Texas Jurisprudence p. 286 and invoking the rule there stated that "all written instruments whereby a single transaction is consummated are to be taken and construed together" appellant points to the fact that it furnished the Government payment and performance bonds totalling the full amount of its contract; that Elliott's contract referred to the prime contract and provided that Elliott assumed toward appellant all the obligations that appellant assumed toward the Government; that the subcontract obligated Elliott to furnish performance and payment bonds in the amount of 100% of the contract;[3] that Elliott's contract was for $9,900; and that surety's bond guaranteed completion of the work to be done under the subcontract. On the basis of these facts appellant argues that the bond should be construed in the light of the purpose to be accomplished by it and as so construed it is entitled to have a judgment against surety in the amount of $9,900.

■ What appellant is in effect saying is that because its subcontract with Elliott obligated the subcontractor to furnish performance and payment bonds each in the amount of 100% of the contract it can, despite the amount specified in the bond, hold the surety liable on the performance bond in an amount equal to 100% of the contract because surety guaranteed completion of that contract. If this argument be sound, and it is not, it was idle to require two bonds where one was sufficient. Such argument also runs counter to the rule of *strictissimi juris* to which the Texas courts adhere

---

3. Appellant's copy of the contract provided that the bond should total 100% of the contract while apparently Elliott's copy only provided that such bond should total 50% of the contract price.

in construing contracts of gratuitous sureties as well as those of corporate sureties for profit. Southern Surety Co. v. Klein, Tex.Civ.App., 278 S.W. 527; Standard Accident Ins. Co. v. Knox, 144 Tex. 296, 184 S.W.2d 612, 615. In the case last cited the rule was thus stated:

"* * * A contract of suretyship will be strictly construed so as to impose on the surety only such burdens or obligations as clearly come within the terms of the contract, and such contract will not be extended by implication or presumption."

It is true as appellant contends that the subcontract provided that Elliott would furnish performance and payment bonds in the amount of 100% of the contract and that the performance bond guaranteed completion of the work to be performed by Elliott under the subcontract. But what appellant apparently overlooks is the fact that the bond only speaks of performance of the contract in expressing the condition upon which the surety's liability is predicated and for the breach of which it would be liable to appellant as obligee. The contract is by reference made a part of the performance bond and accordingly it must be read and construed in connection with that contract. But the obligations of the surety arise out of and are imposed by the bond and can only be measured and determined by the terms of the bond. As authority for this statement and in concluding this phase of the discussion we cite Employers' Liability Assur. Corp. v. Trane Co., 139 Tex. 388, 163 S.W.2d 398, 401, wherein the Supreme Court of Texas said:

"The bond is to be read and construed in connection with the contract, and the obligations imposed upon the sub-contractor by the contract are read into the defeasance clause of the bond because the condition is that if the principal shall perform all the terms and conditions of the contract the obligation shall be void. *But the obligations of the surety arise out of and are imposed by the bond and are measured and determined by its terms * * *.* It speaks of the terms and covenants of the contract only in expressing the condition upon which the obligators' liability to the obligee is defined and for the breach of which they would be liable to the obligee itself." Id. 163 S.W.2d 401, par. 4–5. (Emphasis supplied.)

■ Appellant's third contention asserts error in the trial court's finding that the penal sum of the bond executed by surety was $4,950, because as it argues, the bond is ambiguous and the amount thereof is either the full cost of completion of the subcontract or one hundred percent of the subcontract price. This contention as to ambiguity is seemingly based on the untenable theory that the primary clause of the bond fixing a stated amount as to liability was rendered uncertain and ambiguous by the provision in the defeasance clause as to completion of the contract by surety or the submission of bids. In its petition appellant pleaded in haec verba the entire terms of the bond and upon its provisions reliance was had for its cause of action against surety. It did not plead that the bond was ambiguous nor did it claim that any mistake had been made or that there was anything unusual in respect to the terms of the bond. As a matter of fact this record shows that appellant's superintendent and assistant treasurer were of opinion that "the bond was in sufficient amount, what we required, in accordance with our contract." Thus the issue of ambiguity is raised here for the first time and we think that it has no place in this appeal. But assuming arguendo that the issue is properly before us we are convinced from our study of the record that there is no patent ambiguity in the bond and that construing the instrument from its four corners and giving to each of its provisions their plain ordinary meanings it must be held that the primary or obligation clause of the bond

was incorporated therein as a penalty[4] provision and that surety's liability is limited to the penalty named. Further we are of the definite opinion that the finding of the trial court that the penal sum of the bond was $4,950 is supported by substantial evidence and was induced by a correct view of the law.

 Finally, appellant contends that the trial court erred in rendering judgment in favor of Hubert W. Dennis and against it in this sum of $700 for the reason that the undisputed testimony showed that Dennis merely loaned Elliott the subcontractor, $700 and that the latter used this sum to meet his payrolls on the job; that Elliott did not take any assignments from any laborers or materialmen; and therefore as a matter of law such $700 was not for labor and materials within the meaning of the Miller Act and no right of action existed under said Act in favor of Dennis against the appellant. We agree with appellant that the facts are precisely as stated and that he is correct in his understanding of the law. As authority we refer to the numerous cases from Texas and elsewhere which are cited to the text in 127 A.L.R. at page 976 et seq., in support of the following pronouncement:

"The well-established general rule is that a claim for money loaned or advanced to a building or construction contractor is not within the coverage of the ordinary form of contractor's bond conditioned for the performance of the contract and the payment of all claims for labor and material, even though the borrowed money has been wholly applied to the payment of the cost of labor and material actually going into the construction project."

There is one other matter which should be mentioned in the interest of clarity and that is that this case was appealed by Bill Curphy Company as to all parties including appellee Medart and Sneed and appellee William L. Hussey.

The trial court found that both of these appellees complied with the Miller Act and were entitled to judgment against appellant, Aetna Casualty and Surety Company and J. S. Elliott. The parties have stipulated that the claims of both appellees were just, valid and made in accordance with the Miller Act. By reason of the foregoing and the fact that appellant has not predicated his appeal on any recovery from or relief against them, appellees have filed an appearance for the purpose of formally preserving their rights under the original judgment as rendered by the trial court. This we shall do.

For the reasons stated the judgment of the District Court is in all respects affirmed except as to that portion of the judgment which decrees that Hubert W. Dennis is entitled to recover $700 against appellant. As to that portion the judgment is reversed.

Affirmed in part and reversed in part.

---

4. Chesley v. Reinhardt, Tex.Civ.App., 300 S.W. 973.