Hoyle **BRAZELL** et al., Appellants,

v.

Alta **TSCHIRHART** et al., Appellees.

No. 14740.

Court of Civil Appeals of Texas.

San Antonio.

Feb. 5, 1969.

Rehearing Denied March 12, 1969.

J. B. Langham, Bruce Robertson, Jr., San Antonio, for appellant.

Jack Paul Leon, San Antonio, for appellee.

CADENA, Justice.

Appellants, Hoyle Brazell and J. M. Norris and members of the Kingdom Hall Church, Woodlawn Unit, seek vacation of a temporary injunction issued by a district court of Bexar County prohibiting the continued construction of a church building on Lots 53 and 54, Block D, N.C.B. 11537, Woodlawn Hills Subdivision in San Antonio, and restricting the use of such land to residential purposes. The basis for the injunction is a restrictive covenant which, after providing that the lots in the subdivision shall be used only for residential purposes, proscribes the erection of any building other than a single-family residence. Appellees are Mrs. Alta Tschirhart, Reidus Downing and G. E. Smith, individually and as class representatives of owners of lots in the subdivision.

On March 15, 1963, appellee Mrs. Tschirhart, then a married woman who owned Lots 22 through 54, both inclusive, in the subdivision in her separate right, entered into an agreement with owners of other

lots restricting lots in the subdivision to residential use.[1] On March 29, 1968, Mrs. thereafter conveyed such lots to various 53 and 54 to appellant J. M. Norris, who thereafter conveyed such lots to various trustees of Kingdom Hall Church. At the time this suit was filed, the church building had been substantially completed and at least two religious services had been held in the building.

Appellants assert that the restriction on the use of Lots 53 and 54 is a nullity and will not support the injunction because it is undisputed that Mrs. Tschirhart executed the agreement without the joinder of her husband and did not acknowledge execution of the instrument as required by statutes in effect at the time of such execution.

The relevant statutes in force at the time of the execution of the agreement by Mrs. Tschirhart were Articles 1299,[2] 6605[3] and 6608.[4]

Article 1299 required that the husband join the wife in the conveyance of her separate property and, even when the joinder requirement was satisfied, denied effect to the conveyance unless the instrument was acknowledged by the wife "privily and apart from her husband," in the manner prescribed by Articles 6605 and 6608.

Article 6605 described the essentials of the wife's private acknowledgment, requiring that the notary show and explain the

instrument to the wife and that she acknowledge not only that the instrument was her act and that she willingly signed it, but also that she did not wish to retract it. Article 6608 merely prescribed the form of the certificate to the acknowledgment of a married woman. In effect, the form of certificate which was set out in Article 6608 consisted of recitals showing compliance with the procedure required by Article 6605.

A conveyance of the wife's separate property without the joinder of her husband (with some exceptions not here relevant), or without her acknowledgment in the manner required by the statutes, was a nullity and ineffective to pass any interest, legal or equitable, in such property. Humble Oil & Refining Co. v. Downey, 143 Tex. 171, 183 S.W.2d 426 (1944); Tompkins v. American Republics Corp., 248 S.W.2d 1001 (Tex.Civ.App.—Beaumont 1952, no writ); Note (1945) 23 Tex.L.Rev. 284.

While there is a lack of agreement concerning the nature of an agreement restricting the use of land,[5] the Texas Courts have adopted the doctrine that such an agreement creates an equitable property interest in the burdened land. Our Courts, referring to this equitable interest as an "easement," Davis v. Skipper, 125 Tex. 364, 83 S.W.2d 318 (1935), have held that such an agreement is unenforceable against the promisor or subsequent assignee of the

1. "All the lots, or parcels of land hereinabove described shall be used only for residential purposes. No building shall be erected, altered, or permitted to remain on any lot, or parcel, above described other than single family dwellings consisting of one story, split level or one and one-half stories. No garage, carport, servant's quarters, playhouse, storeroom or utility room shall be erected, or permitted, on any lot, or parcel, until after, or coincidental with the building of a dwelling thereon in conformity with these restrictions."

2. Tex.Rev.Civ.Stat., 1925, Article 1299. (Repealed, Tex.Laws, 1963, ch. 473, p. 1189, sec. 1.)

3. Tex.Rev.Civ.Stat., 1925, Article 6605. (Repealed, Tex.Laws, 1967, ch. 309, p. 735, sec. 6.)

4. Tex.Rev.Civ.Stat., 1925, Article 6608. (Repealed, Tex.Laws, 1967, ch. 309, p. 735, sec. 6.)

5. "One view of these restrictions treats them as contracts concerning or relating to the enjoyment of the land, to be specifically enforced against the promisee or against purchasers with notice, but inoperative as a conveyance of any interest in the land itself. * * * The other view treats the restrictions, though equitable in origin, as creating interests in the land itself, like easements at common law." Cardozo, C. J., in Bristol v. Woodward, 251 N.Y. 275, 167 N.E. 441, 445 (1929). A complete discussion of the two views is found in Reno, The Enforcement of Equitable Servitudes in Land, 28 Va.L.Rev. 951 (1942).

burdened land unless it was executed in compliance with the provisions of the statute [6] relating to the creation of interests in land. Miller v. Babb, 263 S.W. 253 (Tex.Com.App.1924); Keith v. Seymour, 335 S.W.2d 862 (Tex.Civ.App.—Houston 1960, writ ref'd n. r. e.).

Since an agreement concerning the use of land creates an interest in the land itself, such an agreement, when executed by a married woman with reference to her separate realty, purports to create, convey or encumber an interest in such land. Therefore, the execution of the restrictive agreement by Mrs. Tschirhart absent compliance with the mandatory provisions of the statutes then in effect, rendered the agreement unenforceable unless, as contended by appellees, such statutes were made inapplicable because some twelve years before executing the agreement Mrs. Tschirhart had secured a judicial declaration removing her disabilities of coverture for "mercantile and trading purposes" under the provisions of what was then Article 4626.[7]

The judicial order investing Mrs. Tschirhart with the status of a "sole trader" under the provisions of Article 4626, after reciting that the lots in the Woodlawn Hills Subdivision were her separate property, went on to provide that she "be permitted to engage in such business of selling lots or building dwellings in such subdivision, together with all business activities incident thereto, in her own name without the joinder of her husband, A. N. Tschirhart." Clearly, this order purports to permit Mrs. Tschirhart to convey her separate land as a feme sole. It, therefore, becomes necessary to determine whether Article 4626, which established a procedure for securing an order by a wife "removing her disabilities of coverture and declaring

her a feme sole for mercantile and trading purposes" authorized the emancipation of Mrs. Tschirhart to the extent of relieving her of the necessity of complying with Articles 1299, 6605 and 6608 when conveying her separate realty.

Although it is frequently said that Texas adopted the Spanish (or Mexican) community property system, it is clear that the adoption was only partial. Influenced, undoubtedly, by the common law heritage and by the adoption of the common law as the rule of decision, our lawmakers did not adopt the rules allowing the wife to contract concerning her separate property. Instead, our law followed what may be called a "statutory disability" theory. It is essentially correct to say that, at least until recent adoption of remedial legislation, a married woman in Texas rested under the same disabilities in respect to the power to contract and convey as did the wife at common law, except as modified by our statutes. Lee v. Hall Music Co., 119 Tex. 547, 35 S.W.2d 685 (1931). The wife had no general power to contract, and he who would bind her to any contract had the burden of showing the particular facts which invested her with contractual capacity and thus bring his case within the statute making her contract binding upon her. Ellis v. Eden-Birch Lumber Co., 179 S.W.2d 323 (Tex.Civ.App.—Amarillo 1944, writ ref'd); Speer, Marital Rights in Texas (4th ed. 1961), § 245, pp. 366–367.

An examination of the statutes in effect at the time of the execution of the restrictive agreement by Mrs. Tschirhart reveals that the wife had not been awarded complete and unlimited freedom to contract. With the exception of Article 4626, there was apparently but one express grant of contractual authority under the then existing statutes. This was found in Article 4623,[8] which provided that the wife could

6. Tex.Rev.Civ.Stat.Ann., Article 1288.

7. Tex.Rev.Civ.Stat., 1925, Article 4626. (Amended, Tex.Laws, 1963, ch. 472, p. 1188, sec. 6. The amendment involved, in fact, a repeal of the provisions relating to removal of disabilities.)

8. Tex.Rev.Civ.Stat. (1925), Article 4623. (Repealed, Tex.Laws, 1963, ch. 472, p. 1188, sec. 4.)

contract for necessaries for herself and her children. In other areas, the wife's contractual capacity rested on implication.

Under the first marital rights statute adopted in 1848,[9] the wife was expressly authorized to incur debts for the benefit of her separate property. But this express authority was omitted from the 1913 legislation which, among other things, placed in her the sole management, control and disposition of her separate property.[10] But in 1932 it was held that, because of the statute granting her control of her separate property, she could make any contract with respect to such property which a feme sole could make. Levin v. Jeffers, 122 Tex. 83, 52 S.W.2d 81 (1932).

With respect to transfers of property, a wife was authorized to transfer or encumber her personal property, except for stocks and bonds, without joinder of the husband. Donaldson v. Clark, 163 S.W.2d 226 (Tex.Civ.App.—Eastland, 1942, writ ref'd w. o. m.). However, as already noted, restrictive requirements were placed on her power to convey her separate realty.

Neither the briefs filed in this case nor our own independent efforts produced a case considering the relationship between Article 4626 and legislation restricting a wife's capacity to transfer or encumber her separate realty. Prior to 1925, it was clear that removal of a wife's disabilities for commercial purposes did not enlarge her ability to dispose of separate realty, since our sole trader statute, as originally enacted in 1911, contained the proviso "that no married woman shall convey or encumber her separate real property except as now provided by law." [11] At that time, the husband's joinder was essential to the wife's conveyance,[12] and the requirements concerning the wife's separate acknowledg-

ment were the same as those later embodied in Articles 6605 and 6608.[13] Unfortunately, this problem-solving proviso was omitted in the process of the 1925 codification, when the sole trader statute became Article 4626.

■ It can be argued that the deletion of the saving clause in the 1925 revision constituted an amendment of the 1911 enactment, and that the omission must be presumed to indicate a change in the legal rights of the parties affected by the legislation. American Surety Co. of New York v. Axtell Co., 120 Tex. 166, 36 S.W.2d 715 (1931). But even if this argument, which may be persuasive when applied to an ordinary act which is mandatory in form, can validly be applied when the "amendment" occurs during the process of a wholesale statutory revision, it can be countered by the contention that the proviso was dropped because it was considered surplusage. Further, to treat the deletion as the expression of a legislative intent to increase a married woman's freedom to dispose of her separate lands would result in the implied amendment of separate and independent statutes specifically dealing with the conveyance of the wife's separate realty. We would then be faced with the oft-repeated statement that amendments by implication are not favored. 1 Sutherland, Statutory Construction (3rd ed. 1943), § 1930, p. 414. As is often the case, "canons" of construction are more useful as rationalizations of a chosen interpretation than as guides to construction.

There are cases, such as George v. Dupignac, 273 S.W. 934 (Tex.Civ.App.—Waco 1925, writ ref'd), which reflect a tendency to give a liberal interpretation to the sole trader statute, placing little or no limitation on the type of contract executed or the

---

9. 3 Gammel Laws of Texas (1898) 77.

10. Tex.Laws, 1913, ch. 52, p. 61.

11. Tex.Laws, 1911, ch. 52, p. 92, secs. 1–4. (Tex.Rev.Civ.Stat., 1911, Articles 4629a–4629d.)

12. Tex.Rev.Civ.Stat., 1911, Article 1114.

13. Tex.Rev.Civ.Stat., 1911, Articles 6802, 6805.

nature of the business engaged in by a wife who had become a sole trader. However, none of these cases involved the conveyance of encumbrance of the wife's separate realty, nor did any of these holdings amount to a declaration that a wife who had become a sole trader would be bound by an instrument executed by her without conforming to the requirements specifically prescribed by another statute.

■■ As was said in Austin v. United Credits Corp., 268 S.W.2d 793, 795 (Tex. Civ.App.—Fort Worth 1954, no writ): "It is not our province to enlarge the power of a married woman to contract when the Legislature has fixed the limits of that power, or to weaken the safeguards thrown by the law around the property rights of married women and thus, to some extent, thwart the established public policy of this state." Article 4626 spoke of removal of disabilities for mercantile and trading purposes. The phrase "mercantile and trading" is, like so many expressions found in legal instruments, tautological to some extent. The terms "mercantile" and "trading" may be used with a great variety of meanings. In common usage, however, both words refer to commercial activities involving traffic in chattels, although the word "trade" is often used to refer to the manner in which a person makes a living. Despite holdings in such cases as George v. Dupignac, supra, it is apparent from a reading of Article 4626 that it was not intended to provide for the complete emancipation of a married woman. Had the Legislature intended a general emancipation, such purpose could have been easily expressed.

Our Supreme Court has not indicated a willingness to promote the emancipation of married women. This reluctance to decrease the law's "protection" of the wife is reflected in Tolbert v. Standard Accident Ins. Co., 148 Tex. 235, 223 S.W.2d 617 (1949). Prior to 1957, Article 4623,[14] after

exempting the husband's separate property and the "general" community from liability for debts contracted by the wife, concluded: "The wife shall never be * * * a surety on any bond or obligation of another without the joinder of the husband with her in making such contract." Tolbert, pointing out that the provision relating to the wife as surety was a grant of power, held that the statute was to be interpreted narrowly and that, therefore, it did not authorize the wife to become an indemnitor. See Red River National Bank v. Ferguson, 109 Tex. 287, 206 S.W. 923, 927 (1918); Lee v. Hall Music Co., 119 Tex. 547, 35 S.W.2d 685 (1931). Cf. Wilson v. Dearborn, 179 S.W. 1102 (Tex.Civ. App.—Dallas 1915, no writ).

Another example of the judicial reluctance to expand a wife's freedom is found in the decisions considering the wife's liability on warranties contained in her deed. Despite the fact that the right of the wife to convey her separate lands has always been expressly recognized by statute, albeit subject to restrictions relating to joinder of the husband and private acknowledgment, our Courts held that even if the wife properly executed a deed to her separate property, she was not bound by the express warranties contained in the instrument. Although a reasonable man could, without being branded as a militant crusader for women's rights, argue that the express right to convey included the right to include in the instrument of conveyance the usual warranties, it was held that warranties were not a necessary incident to the conveyance of a wife's separate land and, therefore, were not binding on her since there was no statutory provision authorizing the making of such warranties by a married woman. Panhandle Construction Co. v. Lindsey, 123 Tex. 613, 72 S. W.2d 1068 (1934); Wadkins v. Watson, 86 Tex. 194, 24 S.W. 385.

Whenever the Legislature intended to establish a procedure by which a wife

14. Tex.Rev.Civ.Stat., 1925, Article 4623. (Repealed, supra, n. 3.)

could achieve a degree of emancipation which would allow her to convey her separate realty without joinder of the husband, it had no difficulty in giving expression to such intent. Thus, the 1957[15] amendment to Article 4614, which provided a method by which a wife, if she were 21 years of age, could enlarge her rights, expressly recited that a married woman who complied with its provisions would thereafter be able to convey her separate real estate without the joinder of her husband.

■ We conclude that Article 4626 did not dispense with compliance with the requirements of Articles 1299, 6605 and 6608 where the transaction was one involving a conveyance or encumbrance of the wife's separate realty. Our public policy, whether misguided or not, relating to conveyances by a married woman was clearly stated in the statutes requiring joinder of the husband and separate and private acknowledgment by the wife. Article 4626 contained no language purporting to change the requirements for conveyances by married women and, in view of the judicial attitude reflected in the decisions discussed above, we are not inclined to interpret the sole trader statute as accomplishing an implied amendment of Articles 1299, 6605 and 6608.

Appellees next contend that the restrictive agreement is made effective and enforceable by provisions of the 1967 enactment amending Article 4610.[16] Section 6 of that amendatory act expressly repealed Articles 6605 and 6608, thereby eliminating the necessity for the wife's separate acknowledgment. Section 7 of this legislation declared: "All acknowledgments of married women taken since the effective date of H.B. 403, * * * 58th Legislature, * * * in substantial compliance with Article 6607 of the Revised Civil Statutes of Texas, 1925, shall be and the same are hereby validated; PROVIDED, however, that this Act does not apply to litigation pending before the effective date of this Act." The effective date of this act was January 1, 1968.

Appellees argue that since this suit was not filed until after January 1, 1968, and since Mrs. Tschirhart's acknowledgment of the instrument containing the restrictive agreement was in substantial compliance with Article 6607, relating to single acknowledgments, such acknowledgment was validated by the express language of Section 7 of the 1967 legislation. We disagree.

■■ Section 7 of the 1967 enactment relied on by appellees validates only acknowledgments of married women taken "since the effective date" of H.B. 403 and H.B. 404, 58th Legislature.[17] The effective date of H.B. 403 and H.B. 404 of the 58th Legislature was August 23, 1963. Mrs. Tschirhart executed and acknowledged the restrictive agreement April 15, 1963. It is clear that the 1967 legislation had no effect on the validity of this acknowledgment. Nor does the 1967 legislation purport to validate instruments executed without the husband's joinder as required by Article 1299.

The judgment of the trial court is reversed and the temporary injunction is dissolved.

15. Tex.Laws, 1957, ch. 407, p. 1233, Section 1. Article 4614 was drastically amended, Tex.Laws, 1967, ch. 309, p. 736, Section 1, and now deals only with the obligation to support children.

16. Acts, 1967, ch. 309, p. 735.

17. The provisions of H.B. 403, referred to in Section 7 of. the 1967 enactment, were carried forward as Articles 4614, 4618, 4621, 4623 (repealed, see n. 8, supra), 4624 and 4626. H.B. 404 repealed Article 1299. Tex.Laws, 1963, ch. 473, p. 1189.