Shirley Ann **KYLES** et al., Appellants,

v.

**TEXARKANA PRODUCTION CREDIT AS- SOCIATION et al., Appellees.**

No. 8022.

Court of Civil Appeals of Texas, Texarkana.

Nov. 23, 1971.

Rehearing Denied Dec. 28, 1971.

William E. Wiggins, Texarkana, J. R. Cornelius, Cornelius & Cornelius, Jefferson, for appellants.

Norman C. Russell, Atchley, Russell, Hutchinson & Waldrop, Harry Friedman, Harkness, Friedman & Kusin, Texarkana, for appellees.

DAVIS, Justice.

On August 12, 1954, Plaintiff-Appellee, Texarkana Production Credit Association, a corporation, (hereinafter referred to as Production Credit Association); filed suit against Defendant, now deceased, Richard Kyles. The suit was on a plain promissory note and a chattel mortgage lien. Production Credit Association took a default judgment against Richard Kyles on September 20, 1954, for Eleven Thousand Five Hundred Forty-two and 07/100 ($11,542.-07) Dollars with interest thereon at 6% per annum from date of judgment until paid, plus One Thousand One Hundred Fifty-four and 20/100 ($1,154.20) Dollars as attorney's fee. The Production Credit Association also foreclosed on the chattel mortgage on certain crops, farm machinery and cows.

On January 3, 1955, Production Credit Association filed an abstract of judgment in the County Clerk's office. On January 5, 1955, Production Credit Association caused an execution to issue on the judgment against Richard Kyles and it was returned by the Sheriff with the notation "nothing found in Bowie County to levy on." On June 1, 1964, Production Credit Association secured the issuance of another execution against Richard Kyles. It was returned by the Sheriff of Bowie County, Texas, with the notation, "nulla bona." "Nulla Bona" by a translation means there was nothing found in Bowie County, Texas, belonging to Richard Kyles on which the Sheriff could levy the execution.

Another abstract of judgment was filed by Production Credit Association on January 5, 1970, showing Two Thousand Six Hundred Seventy-five and NO/100 ($2,675.00) Dollars credits. This was offered in evidence but it was objected to. The Trial Court sustained the objection. Production Credit Association has brought the abstract of judgment forward by a bill of exceptions.

We will note here that James Kyles passed away on December 21, 1968, before the case was ever tried. The surviving widow of James Kyles, Shirley Kyles, and their five children were made party defendants to the suit. Richard M. Kyles passed away, intestate, on November 3, 1957.

Prior to these occurrences, James R. Kyles and wife, Shirley Kyles, executed a Warranty Deed to Richard M. Kyles in which they conveyed to him a total of 251.-6 acres of land. The deed was executed on June 28, 1952.

On June 29, 1955, Richard M. Kyles and wife, Josephine Kyles, executed a deed to James Kyles on the 251.6 acres of land. This was nearly nine months after the date of the judgment of Texarkana Production Credit Association v. Richard Kyles, dated September 20, 1954. The consideration recited in this deed reads as follows:

"for and in consideration of the sum of One and No/100ths........($1.00) .....Dollars, to us cash in hand paid by JAMES KYLES, the receipt of which is hereby acknowledged and confessed and for the further consideration, evidenced by the delivery and acceptance of this Deed, that said Grantee, JAMES KYLES, herein assumes, binds, and obligates himself to pay and to discharge the unpaid balance now due and owing on

that certain Deed of Trust Note in the original principal sum of SIX THOUSAND FIVE HUNDRED AND NO/100ths ($6,500.00) DOLLARS date      day of      , 1952, payable to FEDERAL LAND BANK, of Houston, Texas, and/or its assigns, fully described in and secured by Deed of Trust of record in Volume      page      of the Bowie County, Texas, Deed of Trust Records, reference to which is hereby made for all purposes."

Bearing in mind that Richard M. Kyles passed away November 3, 1957, Josephine Kyles alleged and swore that she did not appear before a Notary Public and acknowledge the deed.

It will be noted that the Federal Land Bank of Houston, Texas, had the first lien on the property. Josephine Kyles alleged and swore that there was no consideration paid to her, nor to her husband when the deed was executed to James Kyles. The testimony as to the execution of this deed will be discussed in detail later in the opinion.

On February 17, 1964, Production Credit Association filed this suit against James Kyles; Josephine Kyles, individually, her four minor children, and her three adult children, Sidney Kyles, Freida Jo Kyles, and Michael Kyles; and the Federal Land Bank of Houston, Texas, to foreclose on its judgment lien.

A guardian ad litem was appointed to represent the minor children of Shirley Kyles, viz., Craig Kyles, Randy Kyles, Sawn Kyles and Larry Kyles. A guardian ad litem was appointed to represent the minor children of Josephine Kyles.

The case went to trial before a jury on January 5, 1970. There were eleven special issues submitted to the jury. They were all answered in favor of Production Credit Association and Josephine Kyles and her children. The special issues and the jury's answer thereto read as follows:

"SPECIAL ISSUE NO. 1

"Do you find from a preponderance of the evidence that Richard Kyles, deceased, intended to delay, hinder and defraud Texarkana Production Credit Association in the collection of its debt when he conveyed the land described as 139 acres, 62 acres and 50.6 acres in the W. B. Hawkins Survey, Bowie County, Texas, to James Kyles, deceased?

Answer 'Yes' or 'No'

Answer: Yes

If you have answered the foregoing Special Issue 'Yes' then answer the following. If you have answered the foregoing Special Issue 'No,' then you will not answer Special Issue No. 2.

"SPECIAL ISSUE NO. 2

"Do you find from a preponderance of the evidence that James Kyles, deceased, knew that Richard Kyles, deceased, conveyed the land described as 139 acres, 62 acres, 50.6 acres in the W. B. Hawkins Survey, Bowie County, Texas, to him with the intent to delay, hinder and defraud Texarkana Production Credit Association?

Answer 'Yes' or 'No'

Answer: Yes

"SPECIAL ISSUE NO. 3

"Do you find from a preponderance of the evidence that both James Kyles, deceased, and Richard Kyles, deceased, did not intend that the deed dated June 29, 1955 should be effective as conveying the properties described as 139 acres, 62 acres, 50.6 acres in the W. B. Hawkins Survey, Bowie County, Texas?

Answer 'They did so intend' or 'They did not so intend.'

Answer: They did not so intend.

"SPECIAL ISSUE NO. 4

"Do you find from a preponderance of the evidence that James Kyles, deceased, did not pay Richard Kyles, deceased, a substantial and valuable consideration for the conveyance of the land described as 139 acres, 62 acres and 50.6 acres in the W. B. Hawkins Survey, Bowie County, Texas on June 29, 1955?

Answer 'He did pay a substantial and valuable consideration' or 'He did not pay a substantial and valuable consideration.'

Answer: He did not pay a substantial and valuable consideration.

"SPECIAL ISSUE NO. 5

"Do you find from a preponderance of the evidence that Richard Kyles, deceased, was not possessed of property within the State of Texas subject to execution sufficient to pay his existing debts immediately after conveying the land described as 139 acres, 62 acres and 50.6 acres in the W. B. Hawkins Survey, Bowie County, Texas to James Kyles, deceased, on June 29, 1955?

Answer 'He was so possessed' or 'He was not so possessed.'

Answer: He was not so possessed.

"SPECIAL ISSUE NO. 6

"Do you find from a preponderance of the evidence that the officer allegedly taking the acknowledgment of Josephine Kyles did not explain the nature of the instrument to her.

Answer 'She did explain it to her' or 'She did not explain it to her.'

Answer: She did not explain it to her.

"SPECIAL ISSUE NO. 7

"Do you find from a preponderance of the evidence that the officer allegedly taking the acknowledgment of Josephine

Kyles examined Josephine Kyles apart from her husband?

Answer 'She did examine her apart from her husband' or 'She did not examine her apart from her husband.'

Answer: She did not examine her apart from her husband.

"SPECIAL ISSUE NO. 8

"Do you find from a preponderance of the evidence that the officer allegedly taking the acknowledgment did not inquire of Josephine Kyles whether she willingly signed the instrument and that she did not wish to retract it?

Answer 'The officer did inquire' or 'The officer did not inquire.'

Answer: The officer did not inquire.

"SPECIAL ISSUE NO. 8-A

"Do you find from a preponderance of the evidence that any of the land in controversy constituted a portion of the homestead of Josephine and Richard Kyles?

Answer 'Yes' or 'No'

Answer: Yes

"You are instructed that it is not necessary that the homestead be all in one tract, but it may be composed of several different parcels detached from each other.

"SPECIAL ISSUE NO. 9

"Do you find from a preponderance of the evidence that the deed from Richard Kyles and wife, Josephine, to the Defendant, James Kyles, dated. June 29, 1955, was executed for the purpose of the cancellation of the $15,000.00 Deed of Trust Note held by the said James Kyles in addition to the assumption by him of the $6,500.00 note due and owing to the Federal Land Bank of Houston?

Answer 'Yes' or 'No'

Answer: No

"SPECIAL ISSUE NO. 10

"Do you find from a preponderance of the evidence that the Defendants, Shirley Ann Kyles, surviving wife of James Kyles, Diane Lee Cooper, Larry Rollin Kyles, James Craig Kyles, Randall R. Kyles, and Shann I. Kyles, children of the said James R. Kyles, and those whose title they hold, either in person or through a tenant or tenants have had exclusive possession of the land in controversy, continuously cultivating, using, or enjoying the same and claiming the same under a deed or deeds duly registered for any consecutive period of four years subsequent to June 29, 1955, and prior to the filing of this suit on 2–17–64?

Answer 'Yes' or 'No'

Answer: No."

The trial judge entered a judgment in favor of Production Credit Association foreclosing its judgment lien and directing an order of sale issue; that the Sheriff of Bowie County, Texas, seize and sell the property as under execution to satisfy said judgment. The trial judge further directed that the Sheriff, in the event the property did not bring enough money to satisfy the judgment lien, to seize any property belonging to Josephine Kyles, widow of Richard Kyles, deceased, individually and as next friend of their children, and sell the same as in the case of an ordinary execution. The trial judge directed that the sale of the property shall have the force and effect of a writ of possession as between the parties to this suit to foreclose said judgment lien and any person claiming under the Defendants, the Sheriff shall upon the sale of said property proceed to place the purchaser thereof in possession pursuant to the applicable law and such orders of this Court.

The Trial Judge further entered a judgment in favor of Josephine Kyles, widow of Richard Kyles, deceased, individually and as next friend for their children and in favor of their adult children, and against Shirley Kyles, widow of James Kyles, deceased, and all of their children. The Trial Judge granted Josephine Kyles and her children a judgment for title and possession of all those certain tracts of land described in the petition. The Trial Judge further directed that Josephine Kyles and her children have their writ of possession; provided, however, that the right herein granted under this judgment in favor of Josephine Kyles and her children, to the title and possession of the above described real estate is expressly made subject to the foreclosure of the judgment lien of Production Credit Association and the order of sale theretofore granted. The Trial Judge further provided in the judgment that if the proceeds of such sale should bring more money than is sufficient to satisfy the judgment lien of Production Credit Association that it be paid to Josephine Kyles and her children. Shirley Kyles and her children attempted to perfect their appeal and bring forward what they designate as appellants' counterpoints of error.

In seventeen counterpoints of error, appellants do not refer to the points of error that were raised in their motion for new trial. It is doubtful that the brief of the appellants complies with Rule 374, Vernon's Ann.Texas Rules of Civil Procedure and Rule 418, V.A.T.R.C.P. The counterpoints of error do not refer to the points of error that are germane to one or more of the assignments of error that were raised in the motion for new trial. The counterpoints of error read as follows:

"COUNTERPOINT ONE: The Plaintiff, Texarkana Production Credit Association having failed to prove that Richard Kyles, its debtor owned land upon which its Judgment Lien could attach, the Court should have sustained the Defendant's Motion for Judgment at the close of Plaintiff's evidence.

"COUNTERPOINT TWO: The evidence having shown that the first execution was issued on January 5, 1955 and

that no other execution was issued until December 29, 1969; said judgment became dormant on January 4, 1965 and said lien terminated on such date as a matter of law, and the judgment based thereon is void.

"COUNTERPOINT THREE: The evidence having shown that the Abstract of Judgment was issued on January 3, 1955 prior to the issuance of the first execution on January 5, 1955, the same was therefore invalid and did not create a lien on the property of James Kyles.

"COUNTERPOINT FOUR: The evidence showing that the Abstract was not properly indexed, the Court should have sustained Defendants' objections to its introduction.

"COUNTERPOINT FIVE: The evidence having shown that Richard Kyles did not pay any consideration for the land, nor make any payments on the Vendor's Notes, they had no equity on which a Judgment Lien could attach.

"COUNTERPOINT SIX: The Cross-Plaintiff, Josephine Kyles having pleaded and testified that she and her husband, Richard Kyles executed the Deed to James Kyles in order to prevent the Plaintiff, Texarkana Production Credit Association from getting the land, the same was in violation of Article 3996 and 3997 R.C.S. and she and the heirs of Richard Kyles cannot recover herein.

"COUNTERPOINT SEVEN: The Cross-Plaintiffs having predicated their equitable grounds of recovery upon their own fraudulent act, they cannot recover in an equitable cause of action.

"COUNTERPOINT EIGHT: The Cross-Plaintiffs having pleaded and proven that Richard Kyles and wife, Josephine Kyles executed the deed to James Kyles for the purpose of preventing the Plaintiff, Texarkana Production Credit Association from getting the land, the Court should have:

1. Sustained Defendant's Plea in Abatement filed prior to the trial.

2. Instructed a verdict in favor of the Defendant, upon the close of Cross-Plaintiff's evidence.

3. Instructed the jury to return a verdict for Defendants at the close of all evidence.

4. Should not have submitted any issue to the jury on behalf of Cross-Plaintiff.

"COUNTERPOINT NINE: The jury having found by Special Issue Number One that Richard Kyles and wife, Josephine Kyles executed the deed to James Kyles to hinder and defraud the Plaintiff in the cancellation of its debt, the Court should not have submitted Special Issue Number Two, since it was immaterial whether James Kyles knew their intentions or not.

"COUNTERPOINT TEN: Richard Kyles and wife, Josephine Kyles, having executed the deed to James Kyles in consideration of the assumption of the Vendor's Lien Note due the Federal Land Bank and the cancellation of the Second Lien Note held by James Kyles would have been valid without the signature of Josephine Kyles.

"COUNTERPOINT ELEVEN: The deed executed by Richard Kyles and wife, Josephine Kyles, having been executed in consideration of the assumption of the Federal Land Bank's Vendor's Lien Note and the cancellation of the Second Lien Note of $15,000.00 owned by James Kyles, the same would have been valid if the land had been the homestead of the grantors.

"COUNTERPOINT TWELVE: The Court should not have submitted Special Issue Numbers 6, 7, and 8 to the jury since it was not necessary for Josephine to sign the deed that her husband, Richard Kyles, executed to James Kyles, in consideration of the assumption of the Federal Land Bank's Lien and the cancellation of the Second Lien Note.

"COUNTERPOINT THIRTEEN: The Court should not have submitted Special Issue Number Three to the jury because there was no evidence upon which to base such issue.

(Sic) "COUNTERPOINT FIFTEEN: The Court should not have submitted Special Issue Number Four to the jury since there was no evidence of any kind upon which to submit such an issue.

"COUNTERPOINT SIXTEEN: The Court should not have submitted Special Issue Number Five since there was no evidence to support the same.

"COUNTERPOINT FOURTEEN: The deed executed by Richard Kyles and wife, Josephine Kyles, having been executed in consideration of the assumption of the Vendor's Lien Note due the Federal Land Bank of Houston, and the cancellation of the $15,000.00 Second Vendor's Lien Note, the same constituted a recision of the Executory Contract.

"COUNTERPOINT SEVENTEEN: Richard Kyles, being indebted to James Kyles as well as to Plaintiff, had the legal right to prefer him as a creditor, and therefore his conveyance was not fraudulent."

Appellants' first amended motion for new trial that was filed in the Trial Court, omitting the heading and the first paragraph reads as follows:

"1. The deed referred to in Special Issue No. 3 was as pleaded and testified to by Cross-Plaintiffs, Josephine Kyles, was executed for the purpose of defrauding the creditors of Richard and Josephine Kyles, and they cannot engraft an oral trust upon said title in a Court of Equity.

2. The consideration recited in said conveyance being contractual, the same cannot be impeached by oral testimony.

3. The evidence is wholly insufficient to authorize the submission of such issue.

4. There is no evidence to support said issue.

5. The deed referred to in Special Issue No. 4 bound and obligated the Grantee to pay off and discharge the Vendor's Lien Note due the Federal Land Bank of Houston, which was, as a matter of law a valuable consideration.

6. There is no evidence to support said Special Issue.

7. Special Issue No. 5 is immaterial and irrelevant to any issue in this case. The evidence shows without controversy that Richard Kyles and wife, Josephine, conveyed the property in consideration of the assumption of the Vendor's Lien Note owing to the Federal Land Bank of Houston and it was not necessary to be signed or acknowledged by Josephine Kyles.

8. Special Issue No. 6 is irrelevant and immaterial since the land was conveyed in consideration of the assumption of the First Lien Note due the Federal Land Bank of Houston in addition to the cancellation of the $15,000.00 Second Lien Note due James Kyles; it not being necessary for the wife to join in said deed. The evidence is also insufficient to sustain such issue.

9. There was no evidence to support issue No. 7.

10. The evidence was insufficient to support said issue.

11. The evidence shows that the deed was executed for the cancellation of the Vendor's Lien Note which were superior to any homestead rights *of Josephine may have had.*

12. Special Issue No. 8 is immaterial and irrelevant for the reason the consideration for the execution of the deed was the assumption of the payment of the note due the Federal Land Bank and cancellation of the $15,000.00 note to James Kyles, both of which were for the purchase of the property described in said deed. The husband alone could legally convey it for such purpose.

13. The evidence is insufficient to sustain such issue.

14. Special Issue No. 8–A is immaterial and irrelevant for the reason that if it was the homestead, Richard Kyles could legally convey the same without the joinder of his wife in order to release him of the purchase money obligation on said land.

15. There is no evidence to support such issue.

16. The evidence is insufficient to sustain such evidence.

17. The jury's answer to Special Issue No. 9 is contrary to the evidence.

18. The uncontroverted evidence shows that a part of the consideration for the execution of said deed was the cancellation of the $15,000.00 purchase money note evidenced by the Deed of Trust executed by Richard Kyles.

19. The answer of the jury to Special Issue No. 10 is contrary to the uncontroverted evidence.

20. The evidence showed beyond controversy that Cross-Plaintiff's cause of action to set aside such deed was barred by the four year statute of limitation.

21. The Defendant, Texarkana Production Credit Association, having rested its case without having shown that Richard Kyles had ever owned any land upon which its purported Abstract of Judgment could attach. It therefore failed to show or prove its case, and the Court should have granted these Defendants Motion for Judgment at the close of its testimony.

22. The Plaintiff's evidence having shown that the Abstract of Judgment relied upon was issued prior to the issuance of the execution and filing of said Abstract of Judgment and was and is void and of no effect, and the Court should have granted these Defendants Motion for Judgment.

23. Plaintiff's evidence having shown that the Abstract of Judgment was not properly indext as to both the Plaintiff and Defendant was therefore insufficient to give these Defendants Notice of said Abstract of Judgment.

24. The Court should have granted the Motion of these Defendants for Judgment against the Cross-Plaintiffs, Josephine Kyles and Serena Kyles Markham and husband, J. C. Markham, Dale Kyles and Sue Kyles, Richard Kyles, Jr. and Mary Kyles, his wife, and Seth Kyles at the close of their testimony, because their evidence conclusively showed that Richard Kyles and wife, Josephine Kyles intended to and did execute such deed for the sole purpose of defrauding their creditor, the Plaintiff herein, and a Court of Equity will not grant relief under such evidence.

25. The Court should have granted their Motion for Judgment, made at the close of all of the testimony, since there was no evidence introduced by the Plaintiff or Cross-Plaintiff that would support a Judgment for either.

26. The failure of the Court to sustain and in overruling the plea in abate-

ment and Motion for Summary Judgment to the claim asserted by the Cross-Plaintiffs filed by these Defendants.

27. The failure of the Court to sustain and in overruling their objections to the testimony as to statements made by and transactions with her deceased husband, Richard Kyles.

28. The failure of the Court to sustain and in overruling their objections to the Special Issues submitted to the jury, which were made after the Court had prepared his charge and before same was read to the jury.

29. The failure of the Court to sustain and in overruling the Motion for Judgment made by these Defendants after the close of all of the testimony and before submitting the Issues to the jury."

Under the liberal rules of construction of points of error, the counterpoints of error could be considered as points of error had they raised any point of error at all. First, let us consider the first counterpoint of error. The Appellants merely make a statement. It reads as follows: "The Plaintiff, Texarkana Production Credit Association having failed to prove that Richard Kyles, its debtor, owned land upon which its judgment lien could attach, the Court should have sustained the Defendant's Motion for Judgment at the close of Plaintiffs' evidence." This writer thinks a point of error could have been raised by just saying: "The Trial Court erred in overruling Defendant's Motion for Judgment at the close of Plaintiffs' evidence." Then, we have to look to the first amended motion for new trial to see whether or not the statement is germane to any point of error that is raised in the first amended motion for new trial.

■ By their first five counterpoints of error, Appellants contend that judgment should have been rendered in their favor. There is much discussion in the brief about

an innocent purchaser for value, the execution of the deed for fraudulent purposes, and that Appellee, Production Credit Association, had no judgment lien.

Appellee, Production Credit Association, filed suit to foreclose its judgment lien against James Kyles and his deceased brother, Richard Kyles' widow, Josephine Kyles, and all of their children as parties defendants. After the original judgment had been abstracted, the abstract of judgment filed with the County Clerk and an execution issued thereon, Richard Kyles and wife, Josephine Kyles, executed a deed to James Kyles on June 29, 1955. This deed was executed, according to the evidence, in the kitchen of the Richard Kyles home. There was no one present at the time of the signing of the deed except Richard Kyles, James Kyles and Josephine Kyles. Actually, recovery of the land was sought by Josephine Kyles, et al, from James Kyles by a cross-action filed in this case. Josephine Kyles did not actually understand that they were trying to beat Appellee, Production Credit Association, out of its judgment by the execution of the Warranty Deed to James Kyles on the land that was situated in Bowie County, Texas. Josephine Kyles admitted all claims made by Appellee, Production Credit Association. It is an absolute fact that the land in controversy was conveyed by Richard Kyles, the debtor, to James Kyles, his brother, for the stated purpose of preventing Appellee, Production Credit Association, from taking said land and collecting on its judgment. If such an approach should be permitted, then all lien laws, vendor's liens, deed of trust liens, and judgment liens could be defeated by simply conveying away the land which will be subject to the lien. Appellants are seeking to defeat the interest of Josephine Kyles and her children (the widow and children of Richard Kyles, deceased) upon the premises that such land was conveyed to defeat or defraud a creditor. Appellants cannot set up such fact seeking to recover the land from the Grantees to whom it was conveyed in such fraudulent transaction. Neither can any-

one who claims to succeed to the interest of the land from James Kyles keep the ill-gained benefits of his fraudulent conduct and transaction by saying to those who conveyed it to him that they cannot have it back by reason of the fraud that was perpetrated against the Appellee, Production Credit Association. Neither can Appellant say that Appellee, Production Credit Association, cannot collect its judgment lien because Richard Kyles held no interest in the land since it had been conveyed to James Kyles.

■ The only requirement of a person, firm or corporation seeking to enforce a lien is that they file a petition in an action to enforce a lien and should set forth fully all facts relied upon to show the existence of a lien. Miller v. Dunagan (1936), Tex. Civ.App., 99 S.W.2d 434, n. w. h., and the cases cited therein.

There is plenty of evidence to support the finding of the jury that Richard Kyles, deceased, intended to delay, hinder and defraud Appellee, Production Credit Association, from the collection of its debt when he conveyed certain land in Bowie County, Texas, to James Kyles, deceased. James Kyles, deceased, knew that Richard Kyles, deceased, conveyed the land in question to him with the intent to delay, hinder and defraud Appellee, Production Credit Association, from collecting its judgment lien. Richard Kyles and James Kyles did not intend for the deed of June 29, 1955, to be effective as conveying the property therein described. James Kyles did not pay a substantial and valuable consideration to Richard Kyles and wife, Josephine Kyles, at the time the property was conveyed under the deed of June 29, 1955. The consideration recited in the deed from Richard Kyles and wife, Josephine Kyles, on June 29, 1955, to James Kyles is One and No/100 ($1.00) Dollar, plus an agreement by James Kyles, Grantee, to assume the "unpaid balance," now due and owing on a Six Thousand Five Hundred Dollar note

to the Federal Land Bank of Houston. The deed was filed for record the date it was executed.

Josephine Kyles, one of the Grantors in the deed to the land, testified with reference to the execution of the deed, saying: "That Richard Kyles, her husband, told her that he was letting James Kyles have the land so the *C.P.A.* could not get it because if we (referring to himself and Josephine) didn't have any land the *C.P.A.* could not get it and that James would give the land back to them when we want it." She testified that James Kyles never worked the land himself; he was a resident in California. She testified: "that they continued to live on the land and did everything they wanted to because they thought it was theirs. James Kyles might have leased the land out but did not work it as he was not here and Josephine Kyles asked him to return the land to her." Josephine Kyles further testified: "that her husband, Richard, told her that we were going to lose the land if they did not deed it over to James Kyles and let him keep it for them." At last, Josephine Kyles, a widow, testified: "that she talked to the man who had the place leased with reference to the payment of the rent to her." Concerning the payment on the Federal Land Bank Note, Josephine Kyles testified that her husband took money to a New Boston, Texas, bank, and a Mr. Russell at the bank took the money and sent it to the Federal Land Bank in Houston.

There was other evidence that Richard Kyles was in possession of the land in controversy and continued to work it until his death.

Under the testimony in the case, any person who now claims any title under James Kyles, deceased, the Grantee in the deed of June 29, 1955, cannot assign to themselves the role of an innocent purchaser; or, one without notice of the lien. The law charges each of them with notice of such a lien.

Art. 6646, Vernon's Ann.Tex.Civ.St., *Record of a grant*, etc., reads as follows:

"The record of any grant, deed or instrument of writing authorized or required to be recorded, which shall have been duly proven or acknowledged for record and duly recorded in the proper county, shall be taken and held as notice to all persons of the existence of such grant, deed or instrument."

Our Texas courts in Briscoe v. Bronaugh, (1846), 1 Tex. 326, said:

"a purchaser with notice of a lien takes the estate, if at all, sufficient to the prior equity, and cannot set up his title against the person holding it until he has first paid off and discharged the encumbrance."

A person cannot become an innocent purchaser who has actual or constructive notice of a lien or a mortgage. 59 Tex. Jur.2d 312, Sec. 779.

■ A lien may be enforced against a purchaser who has acquired the property with notice of the lien. 36 Tex.Jur.2d 686, Sec. 11, and the authorities cited therein.

A judgment lien is a creature of the statutes. Art. 5447, 5448, and 5449, V.A. T.C.S. Since this opinion is quite lengthy, we suggest the reading of these three articles and the authorities cited therein.

■ We will say this, the judgment lien was fully recorded and the suit to foreclose on the judgment lien was filed within ten (10) years after the date of the judgment and the date of the first abstract of judgment had been filed in the County Clerk's office. The abstract of judgment was properly indexed and another execution was issued on June 17, 1964. We think the abstract of judgment that was filed on January 5, 1970, showing credits of Two Thousand Six Hundred Seventy-five and No/100 ($2,675.00) Dollars was admissible in evidence.

Appellants' first five counterparts of error are overruled. Appellee's, Production Credit Association, point A is sustained.

Appellants' counterpoints 6, 7, 8, and 9 make statements concerning the statutes of fraud, that the cross-plaintiffs have no equitable grounds of recovery. The Trial Court should have sustained Appellants' plea in abatement, should have instructed a verdict in favor of the Appellants and should not have submitted any issue to the jury on behalf of cross-plaintiffs; and, the jury having found that Richard Kyles and wife, Josephine Kyles, executed the deed to James Kyles to hinder and defraud Production Credit Association in the cancellation of its debt, the Court should not have submitted special issue No. 2, since it was immaterial whether James Kyles knew their intention or not. Appellants make some very forceful arguments in behalf of these statements, but they are not in point.

■ Josephine Kyles, et al, takes the position that the property involved was the homestead of Richard Kyles and wife, Josephine Kyles. That Josephine Kyles had never been before a notary public in connection with the execution of the deed dated June 29, 1955. She swore most positively that she signed the deed in her kitchen north of Hooks, Texas. There was no one present at the time she signed the deed except her husband, Richard Kyles, and James Kyles. Josephine Kyles never appeared before any notary public. It seems from the evidence that James Kyles was not only a party to the attempt by the deed of June 29, 1955, to put the property out of the reach of the Appellee, Production Credit Association; although, James Kyles knew that there would not be an acknowledgment to the deed executed by Josephine Kyles. Art. 1300 and 6605, V.A.T.C.S., that were in effect at the time of the execution of the deed, clearly set forth the requirements which then existed for the conveyance of a homestead. The law that was in effect at the time of the execution of the deed governed the out-

come of this lawsuit. Humble Oil & Refining Company v. Downey (1944), 143 Tex. 171, 183 S.W.2d 426, clearly states the law in the State of Texas with respect to the situation where a wife fails to be examined privily and apart from her husband. Art. 6608, V.A.T.C.S. prescribes the form of a married woman's acknowledgment to a Warranty Deed to a homestead. A wife cannot be bound by a false certificate of a Notary Public as to her privy acknowledgment. Their power to act must be invoked by the wife. The most recent court decisions indicate that the recent amendments to the Articles of the Texas Civil Statutes have not in any way altered the public policy of this state in requiring a' joinder of the husband and wife in separate and private acknowledgment by the wife during the time involved in this case. Mata v. Rangel, (1968), Tex.Civ.App., 432 S.W.2d 146, writ refused, n. r. e.; Brazell v. Tschirhart, (1969), Tex.Civ.App., 438 S.W.2d 603, n. w. h.; Home Improvement Loan Company v. Pruitt, (1961), Tex.Civ. App., 345 S.W.2d 452, w. r., n. r. e.; Abilene White Truck Company v. Petrey, C. C.A. (1964), 384 S.W.2d 211, w. r. n. r. e.; Sullivan v. Barnett, Tex.Sup.Ct.1971, 471 S.W.2d 39.

Much has been written on the statute of frauds. We will point out that James Kyles conveyed to Richard Kyles the tract of land that is involved in this lawsuit on June 28, 1952, for a consideration of Sixteen Thousand Five Hundred and No/100 ($16,500.00) Dollars cash and Six Thousand Five Hundred and No/100 ($6,500.00) Dollars in money that was borrowed from the Federal Land Bank of Houston, Texas. The consideration does not say anything about a personal note or Deed of Trust Lien being executed to James Kyles by Richard Kyles in the amount of Fifteen Thousand and No/100 ($15,000.00) Dollars as any part of the consideration. Be that as it may, the Deed of Trust from Richard Kyles to James Kyles for Fifteen Thousand and No/100 ($15,000.00) Dollars was not filed for record until the 23rd day of March, 1964.

The Warranty Deed that was executed by Richard Kyles and wife, Josephine Kyles to James Kyles on June 29, 1955, merely recited a consideration of the assumption of the unpaid balance due and owing the Federal Land Bank of Houston, Texas, on the original Six Thousand Five Hundred Dollar note. There was nothing said in the deed that it would cancel the Fifteen Thousand Dollar personal note and the Deed of Trust Lien held by James Kyles. We have heretofore stated that the conveyance on June 29, 1955, was in violation of the statutes of fraud. The Appellants are without any standing to rely upon the statutes of fraud. The jury found, upon sufficient evidence, that the deed dated June 29, 1955, was not executed for the purpose of the cancellation of the $15,000.00 note and the Deed of Trust Lien on the land involved. Josephine Kyles testified that she and her family had lived on the land in controversy for 38 years. Richard Kyles, Jr., testified that his uncle, James Kyles, told him in 1968 that the instrument in question was not meant to be a deed. In construing the deed dated June 29, 1955, we must ascertain what the true intentions of the parties were. Jacobs v. Chandler, (1952), Tex.Civ.App., 248 S.W.2d 825, n. w. h. According to the evidence, the deed was not intended by either party to be effective to convey the property in question. The jury so found. The least that could be said is that the transaction in question gives rise to a resulting trust. Murphy v. Johnson, (1969), Tex.Civ.App., 439 S.W.2d 440, n. w. h.

Appellants' counterpoints of error 6, 7, 8 and 9 are overruled.

We think the evidence is sufficient to show that Josephine Kyles did not acknowledge the deed that was executed by her on June 29, 1955. Appellants complain most vigorously of the fraudulent acts alleged against Josephine Kyles and her children. In this case, James Kyles and Richard Kyles conspired together to defeat the rights of Appellee, Production Credit Association, of its judgment lien. The heirs

of James Kyles are no less guilty of the stigma of fraud than are the heirs of Richard Kyles. They have no superior right to equitable relief.

We have carefully examined Appellants' other counterpoints of error, find them to be without any merit; and, they are overruled.

The judgment of the Trial Court is affirmed.